IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO (CLEVELAND)

| | |
|---|---|
| ShieldMark, Inc. ) | |
| ) | Case No.: 1:12-CV-00223-DCN |
| Plaintiff, ) | |
| ) | Judge Donald C. Nugent |
| v. ) | |
| ) | |
| InSite Solutions, LLC. ) | |
| ) | |
| Defendant. ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, InSite Solutions, LLC ("InSite"), has moved this Court for a summary judgment totally dispositive of the Complaint herein. In support of its Motion, InSite offers this brief, supported by the patent-in-suit (Exhibit A) and the Declaration of Hendrikus Gerrits (Exhibit B).

**BASES FOR SUMMARY JUDGMENT**

It is fundamental that summary judgment is appropriate in patent cases, as in others, when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *Johnston v. IVAC Corp.*, 885 F.2d. 1574, 1576-77 (Fed. Cir. 1989); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). Summary judgment is particularly appropriate where no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The sale or public use of an invention more than a year prior to the filing of a patent application bars the issuance of any patent on that invention. 35 U.S.C. §102(b); *Honeywell Int'l Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 996, 998 (Fed. Cir. 2007); *Invitrogen*

1

*Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374 (Fed. Cir. 2005); *Mortionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1384 (Fed. Cir. 2007), citing *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 64 (1998) holding that "both the on sale and public use bars of § 102(b) stem from the same reluctance to allow an inventor to remove existing knowledge from public use."

It is elementary that neither the sale nor public use of the invention need be by the inventor or with the inventor's knowledge or approval, but any public use, sale or offer for sale prior to the critical date of the patent invalidates the patent. See *Motionless Keyboard*, 486 F.3d at 1384.; *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580 FN. 14, (Fed. Cir. 1985); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Epstein*, 32 F.3d 1559, 1564 (Fed. Cir. 1994); *Smith v. Johnson Propeller Co., Inc.*, 152 F.3d 943 (Table) at *3 (Fed. Cir. 1998).

An invention is defined by the patent's claims. *Zenith Labs, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1424 (Fed. Cir. 1994) If the difference between a patent's claims and products sold before the critical date of the patent would have been obvious to a person of ordinary skill in the art at the time the invention was made, the patent's claims are invalid. 35 U.S.C. §103(a); *Wm. Wrgley Jr. Co. v. Cadbury Adams USA, LLC*, 683 F.3d 1356, 1367 (Fed. Cir. 2012); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009).

A patent must be proven invalid under 35 U.S.C. §102 or 103 by clear and convincing evidence. *Wm. Wrigley Jr. Co*, 683 F.3d at 1367; *Proctor & Gamble Co.*, 566 F.3d at 994; *Amgen, Inc.*, 580 F.3d at 1362.

## ALTERNATIVE BASES OF INVALIDITY

The focus of this motion for determination of patent invalidity is the "on-sale bar" under 35 U.S.C. §102(b).  As will become apparent, the same operative facts support a determination of patent invalidity based on (a) the "public use bar" of 35 U.S.C. §102(b) and (b) the fact that "the invention [of the '480 patent] was known or used by others in this country . . . before the invention thereof by the applicant for [the '480] patent" as proscribed by 35 U.S.C. §102(a).[1]

## BACKGROUND OF CASE

In its Complaint, Plaintiff, ShieldMark, Inc. ("ShieldMark"), alleges that InSite has infringed ShieldMark's U.S. Patent 8,088,480 ("the '480 patent") by making, using, selling, offering for sale, and/or importing adhesive tape that InSite sells under the names "Superior Mark Tape" and "Last Mark Isle Marking Tape."  By its Initial Infringement Contentions (Doc. 19) ShieldMark appears to have limited its charges to the "Superior Mark Tape" and has identified the asserted claims as claims 2-8, 10, 12 and 13 of the '480 patent.

InSite has served ShieldMark with various contentions of invalidity and unenforceability, including contentions that the asserted claims of the '480 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of products offered for sale and sold by Jeka USA Services, Inc. in the United States, all well more than one (1) year prior to the effective filing date of the '480 patent. While InSite advances various other bases of prior art invalidity of the '480 patent, for purposes of this Summary Judgment Motion, it limits its focus to the sale of the Jeka floor marking products in the United States long before the filing bar date of the '480 patent.  But, as presented above, the same operative facts that support a finding of invalidity by the sale of the Jeka products also support a finding of invalidity on other grounds as well.

---

[1] There is no evidence of record that the inventor of the '480 patent made his invention prior to the use of the Jeka products addressed later herein.

By its Scheduling Order of Doc. 25, this Court set a date for the early filing of summary judgment motions based on prior art. This Motion is timely brought pursuant to that Order.

## SUMMARY OF ARGUMENT

The application that issued into the '480 patent was filed on March 29, 2003. The invention defined by the asserted claims of the '480 patent was on sale in the United States by Jeka USA Services, Inc. for a period well in excess of one (1) year prior to that filing date. Accordingly, the '480 patent is invalid in view of the "on-sale bar" of 35 U.S.C. §102(b).

To the extent that there is any difference between the Jeka floor marking products sold before the critical date of the '480 patent and the asserted claims of that patent, the modification of the Jeka floor marking products to satisfy that difference would have been obvious to a person of ordinary skill in the art, rendering those claims invalid under 35 U.S.C. §103(a).

Simply put, the '480 patent is invalid for failing the on-sale bar requirements of 35 U.S.C. §102(b) and/or the obviousness bar of 35 U.S.C. §103(a).

## REQUIREMENTS FOR PATENTABILITY

The basic requirements for the patentability of any invention are generally set forth in 35 U.S.C. §§ 101, 102 and 103. These sections respectively (a) define patentable subject matter, (b) set forth the requirement of novelty and (c) set forth the requirement of non-obviousness. At issue here are the requirements of 35 U.S.C. §§102(b) and 103(a).

**The On-Sale Bar Of 35 U.S.C. §102(b)**

The patent statutes are unequivocal that a patent may not issue on an application that is filed more than one year after the invention was first placed on sale in this country:

> A person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. §102(b). This is typically referred to as the "on-sale bar." The date that is "one year prior to the date of the application for patent" is typically referred to as the "critical date" for the patent. In other words, certain activities that occur prior to the critical date can bar the issuance of a patent or render a patent invalid.

**The Obviousness Bar of 35 U.S.C. §103(a)**

If there are differences between the invention as defined by the claims of a patent and the product that was on sale, those patent claims are invalid if the difference between what was on sale and what was patented was of such a nature that it would have been obvious to a person of ordinary skill in the art to modify what was on sale to conform to the patent claims. In this regard, the patent statutes provide:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. §103(a). As it pertains here, where there may be a difference between a patent claim and the product that was on sale prior to the critical date, that patent claim is invalid if it would have been obvious to a person of ordinary skill in the art to modify the product on sale to include the difference.

**RELEVANT FACTS**

The relevant facts of this case are apparent from the '480 patent itself, attached as Exhibit A, and the Declaration of Hendrikus Gerrits, attached as Exhibit B.

The face of the '480 patent shows a filing date of September 29, 2003. Accordingly, the "critical date" of the '480 patent is September 29, 2002. The asserted claims of the '480 patent,

5

being claims 2-8, 10, 12 and 13, are presented at the end of the '480 patent, beginning in Column 4.[2]

The facts relevant to the on-sale and obviousness bars of the asserted claims of the '480 patent are set forth in detail in the Declaration of Hendrikus Gerrits (Exhibit B) which makes reference to a claims chart exhibit addressing the asserted claims and declaring, under penalty of perjury, that products corresponding to each of asserted claims 2-6, 8, 10 and 12 were on sale and sold in the United States prior to the critical date of the '480 patent. The Declaration further declares that it would have been obvious to a person of ordinary skill in the art to have modified the product so sold to include the minor features of asserted claims 7 and 12, if desired.

The gravamen of the defense of the on-sale bar is the actions of Jeka USA Services, Inc. within the United States since at least the mid-1990's to the present. With the critical date of the '480 patent being September 29, 2002, the activities of Jeka in the U.S. prior to that date are of significant relevance. As apparent from the Gerrits' Declaration, Hendrikus Gerrits is a citizen of the Netherlands, Global Sales Manager of Jeka Industriele Efficiency b.v. and has been continuously employed by that company or its affiliated companies since August 1, 1989. (Exhibit B, ¶¶ 1 and 2) Jeka USA Services, Inc. (hereinafter "Jeka") is a subsidiary of Jeka Beheer b.v. which is a holding company and owner of Jeka Industriele Efficiency b.v. and Jeka has provided products and services in the United States market continuously since the mid-1990's. (Exhibit B, ¶3) One of the products continuously offered by Jeka in the United States since the mid-1990's is an adhesive tape for application to a flooring environment, generally referred to by Jeka as "a floor marking system or self-adhesive floor marking." (Exhibit B, ¶ 4)

---

[2] Claim 12 in Column 5 of the '480 patent has been rewritten in accordance with the Certificate of Correction attached as the last page to the patent.

In anticipation of preparing his Declaration, Mr. Gerrits read and familiarized himself with the '480 patent, particularly studying asserted claims 2-8, 10, 12 and 13, and coming to understand that the critical date of that patent is September 29, 2002 which is one (1) year prior to the filing date of the '480 patent. (Exhibit B, ¶¶ 5-7)

Against that backdrop, Mr. Gerrits avers that from at least the mid-1990's to date, Jeka has continuously offered for sale, sold, and observed at least certain installations of its floor marking system or adhesive floor marking that respond to the express language of at least certain of the claims of the '480 patent. (Exhibit B, ¶ 8) Based on personal knowledge, he avers that the Jeka products offered for sale, sold and installed in the United States since at least the mid-1990's had all of the limitations of the asserted claims of the '480 patent, but he was unaware of the Shore A Hardness referenced in claims 5 and 12 of the patent, and he further acknowledged that the Jeka products did not have the textured surface of claim 7. However, he is aware of tests conducted on the Jeka product showing a Shore A Hardness falling within the ranges stated in claims 5 and 12, and further avers that it would be obvious to texture the surface of the Jeka product as stated in claim 7. (Exhibit B, ¶ 9)

Mr. Gerrits further avers that, in the context of the claims of the '480 patent, there has been no change in the Jeka floor marking systems or self-adhesive floor markings offered for sale, sold and /or installed in the United States since at least the mid- 1990's. (Exhibit B, ¶ 10)

Mr. Gerrits further identifies himself as a person skilled in the art of floor marking tapes in view of his 23 years of experience in that art, and having worked with and/or supervised persons of ordinary skill in that art since well before the critical date. He states unequivocally that, to the extent there is any difference between the Jeka products offered for sale, sold and/or installed in the United States prior to the critical date and the structures of the asserted claims of

the '480 patent, those differences would have been obvious to a person of ordinary skill in the art and modification of the Jeka products to conform with those claims would have been obvious before the critical date. (Exhibit B, ¶ 12) He continues unequivocally stating that there is nothing new or unobvious about the asserted claims of the '480 patent when considered in light of the Jeka products offered for sale, sold and installed in the United States prior to the critical date of September 29, 2002. (Exhibit B, ¶ 13)

Mr. Gerrits attaches to his Declaration of Exhibit B, a claims chart (Exhibit 1 to his Declaration) that addresses each of the asserted claims, that claims chart being supported by Exhibits F, G, H, I, J and P, all dealing with the Jeka products sold prior to the critical date of the '480 patent.

The claims chart of Exhibit 1 to the Gerrits Declaration shows, with reference to the specific claim language of each of the asserted claims, that the features of the claims were present in the Jeka floor marking products on sale and installed in the United States from at least prior to the mid-1990's to the present. In that regard, the claims chart advances Exhibit F as a web page published September 7, 2001. Exhibit G is advanced as a 1995 price list showing the Chicago location of Jeka offering the Jeka floor marking products for sale in the U.S. Exhibit H is presented as a 1997 publication disclosing the Jeka floor marking products. Exhibit I, as the claims chart states, discloses further information regarding the PVC (poly vinyl chloride) film using in manufacturing the Jeka floor marking systems. Exhibit J presents the details of the adhesive used by Jeka for its floor marking products, and Exhibit P is a test report from Akron Rubber Development Laboratory, Inc., showing the Shore A Hardness of the Jeka material.

In sum, the Gerrits' Declaration avers that in the context of the '480 patent, the Jeka floor marking systems have been the same consistently since the mid-1990's to the present. The chart

further correlates the specific claim language of each and every asserted claim with the products and the sales and installation activities of Jeka in the United States long before the critical date of the '480 patent. The facts are presented on the basis of first-hand knowledge.

## ARGUMENT

The Declaration of Hendrikus Gerrits, and its claims chart and accompanying exhibits make it clear that the invention defined by the asserted claims was on sale in the United States prior to the critical date of the '480 patent. The chart shows unequivocally that the products sold by Jeka in the United States prior to the critical date had all of the features of asserted claims 2-6, 8, 10 and 13. Under 35 U.S.C. §102(b) there can be no question but what these claims are invalid in view of the on-sale bar.[3]

As to claim 12, Mr. Gerrits avers in ¶ 9 of his Declaration that the Jeka products have a Shore A Hardness that falls within the stated range of claim 12 of being "between **about** 93 and 97." (emphasis added) The Shore A Hardness of the Jeka products tested at 99, which can certainly be considered to be "between **about** 93 and 97." Indeed, 99 is **about** 97. Even if that were not the case, Gerrits presents in his claims chart, based upon his years of experience in the floor marking systems art, that "[I]t would have been obvious to a person skilled in the art prior to September 29, 2002, to lower that feature to the stated range, if desired." The obviousness to lower the Shore A Hardness from 99 to 97 if desired, which would appear obvious to even the lay person, renders claim 12 invalid under 35 U.S.C. §103(a), if not under 35 U.S.C. §102(b).

With regard to claim 7, this claim includes the requirement of "said polymer layer includes a textured surface." As presented in the claims chart, Gerrits acknowledges that the

---

[3] That Declaration, claims chart, and accompanying exhibits are also unequivocal that products responding to the asserted claims were in public use before the critical date (35 U.S.C. §102(b)) and were known and used by others prior to the invention of the '480 patent (35 U.S.C. §102(a)), there being no evidence of record that the inventor of the '480 patent came up with his invention prior to Jeka's activities.

Jeka products had smooth surfaces, but again offers that "texturing the surface would have been obvious to any person skilled in the art prior to September 29, 2002."  Indeed, anyone who has seen smooth paint and textured paint, smooth wallpaper and textured wallpaper, smooth leather and textured leather, or the like would certainly understand that if it were desired to texture the surface of the marking tape, it would be obvious to do so.  Gerrits avers that it would certainly have been obvious to a person skilled in the art prior to the critical date.

## CONCLUSION

Each of the asserted claims of the '480 patent is invalid in view of the on-sale bar in that Jeka products on-sale and in use in the United States prior to the critical date of the '480 patent embodied each and every limitation of the asserted claims and/or to the extent that any limitation was absent in the Jeka products, the modification of the Jeka products to accommodate the patent claim would have been obvious to a person of ordinary skill in the art.  In like manner, the asserted claims are invalid for having been in public use before the critical date (35 U.S.C. §102(b)) and/or having been known or used by others before the inventor of the '480 patent devised his invention.

The asserted claims having been shown to be invalid, the Complaint herein should be dismissed.

Respectfully submitted,

s:/Ray L. Weber
Ray L. Weber     (0006497)
Laura J. Gentilcore     (0034702)
Mark L. Weber     (0072078)
Renner, Kenner, Greive, Bobak, Taylor & Weber
106 S. Main St. , Suite 400, First National Tower
Akron, Ohio 44308
Telephone:  (330) 376-1242
Email: rlweber@rennerkenner.com
Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2012 the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Ray L. Weber