**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ShieldMark, Inc. | ) | CASE NO. 1:12-CV-00223-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | **PLAINTIFF'S OPENING CLAIM** |
| | ) | **CONSTRUCTION BRIEF** |
| InSite Solutions, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, ShieldMark, Inc. ("ShieldMark") submits the following Opening Claim Construction Brief pursuant to this Court's Case Management Order of May 18, 2012 (Doc #25) and as required under Local Patent Rule 4.4(a). The Brief is supported by the Declaration of W. Scott Harders, attached as Exhibit A, which identifies and authenticates the '480 Patent (Exhibit A-1), the '480 Patent prosecution history (Exhibit A-2) Defendant's Preliminary Claim Constructions and Supporting Materials (Exhibit A-3), and relevant dictionary definitions (Exhibit A-4-a, A-4-b, A-4-c, A-4-d).

**I.      BACKGROUND AND TECHNICAL OVERVIEW**

This case concerns the patent owned by ShieldMark, U.S. Pat. No. 8,088,480 ("the '480 Patent'") that InSite Solutions, LLC ("InSite") infringed upon. As described in the '480 Patent "Background", "this invention relates to an adhesive tape having superior ductility, strength, tear resistance and abrasion resistance, particularly as a pressure sensitive adhesive." This type of adhesive tape is "economical and adaptable to many different applications. One primary example is as floor marking in industrial and factory environments."

One aspect of products made under the claims of the '480 Patent is the ability to rise above many of the problems of similar adhesive tapes at the time of the invention, which "lack sufficient strength and hardness to prevent wearing, tearing, cracking and breakage from heavy traffic," in addition to poor adhesive quality.  The '480 Patent has "superior ductility, strength, tear resistance and abrasion resistance".  Among others, these features are claimed in terms of "thickness;" "material hardness" measured on particular scale known as "the Shore A Hardness" scale; and "peel adhesion," a measure of the force needed to pull a sample from a test platform which may be measured under a standard test methodology.

An exemplary product made under the '480 Patent is an adhesive tape that includes:

> (i) a polymer layer having a thickness between 0.020 inches and 0.065 inches, the polymer layer defining a first side; and
> (ii) a double sided adhesive layer where one side of the double sided adhesive layer is in substantially continuous contact with the first side of the polymer layer and an opposing side of the double sided adhesive layer is disposed to adhere to the flooring environment;
> where the adhesive tape has a peel adhesion greater than 2.0 lb/in width, measured under a test method including peeling the tape at a 90 degree angle after application to a stainless steel panel.

The '480 Patent, Claim 2, column 4, lines 30-40.

InSite infringed, contributed to, and/or induced infringement of one or more claims of the '480 Patent by making, using, offering to sell, selling within the United States, and/or importing into the United States adhesive tapes including those presently sold under the name "Superior Mark Tape".

2

## II.     AGREED UPON TERMS IF CONSTRUCTION NEEDED

"When the parties raise an actual dispute regarding the proper scope of ... [a] claim[ ], the court, not the jury, must resolve the dispute." O*2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed.Cir.2008). "In some cases, the ordinary meaning of claim language ... may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Terms that have a plain and ordinary meaning typically do not need to be construed, as their meaning is clear from the term itself. See *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed.Cir.2010). There is a "heavy presumption" that claim terms mean what they say and carry their ordinary meaning as viewed by one of ordinary skill in the art. *W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed.Cir.2004) (internal quotation marks omitted) (quoting *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999)); *Intellectual Prop. Dev., Inc. v. UA–Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1315 (Fed.Cir.2003). Dictionaries, encyclopedias, and treatises may be used to discover a term's ordinary meaning. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed.Cir.2003); *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202–03 (Fed.Cir.2002).

InSite has identified 13 terms and phrases in the '480 patent that it believes the Court needs to construe.  ShieldMark engaged in good faith discussions with InSite as required under L.P.R.  4.1(b) in an attempt to reach agreement on the identified claim terms.   ShieldMark's position remains that the following terms do not need to be

construed and that the terms should be given their plain and ordinary meaning.  However, in the event the Court rejects this position and accepts the position of InSite that these terms need to be construed, ShieldMark does not dispute the proposed definitions for the following claims and respectfully requests that this Court adopt these proposed definitions as listed below.

| Claim Terms | Agreed meaning if construed |
| --- | --- |
| "a thickness" in claim 2 | "a distance between the upper surface and the lower surface" |
| "peel adhesion greater than 2.0 lb/in width" in claims 2 and 5 | "a measure of strength of an adhesive bond between the adhesive tape and a test surface greater than 2 lbs. for each inch of width" |
| "peeling the tape at a 90 degree angle" in claim 2 | "the angle between the test surface and the direction of the force which is pulling the tape from the test surface is 90 degrees" |
| "allowing a dwell of one hour" in claim 3 | "waiting one hour from sample preparation to conduct the test method" |
| "pressure sensitive" in claim 13 | "capable of adhering with application of pressure" |
| "peeled at a 90 degree angle" in claim 5 | "the angle between the test surface and the direction of the force which is pulling the tape from the test surface is 90 degrees" |
| "dwell time of 1 hour" in claim 5 | "waiting one hour from sample preparation to conduct the test method" |

## III.    LEGAL STANDARDS

It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Interpretation and construction of patent claims is a matter of law exclusively for the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

Where the meaning of claim language is not readily apparent, and the Court must look to publicly available sources to aid its construction—i.e., "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic

4

evidence….” *Id.* The three main sources for claim construction are the claims themselves, the written specification of which the claims are a part, and the prosecution history or file wrapper representing the back-and-forth discussion between the inventor and the Patent and Trademark Office. *Markman*, 52 F.3d at 979–80. These are collectively referred to as the intrinsic record of the patent. *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1377 (Fed.Cir.2005). Other evidence of claim meaning such as inventor testimony, expert testimony, and lay or technical dictionary definitions is referred to as extrinsic evidence. *Phillips*, 415 F.3d at 1317. Extrinsic evidence is to be given less weight than intrinsic evidence and cannot contradict a claim definition from the intrinsic record. *Id.* at 1318–19; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed.Cir.2004) (explaining “that the intrinsic record is the primary source for determining claim meaning”).

## IV.    PLAINTIFF SHIELDMARK, INC.’S PROPOSED CONSTRUCTIONS

The meaning of certain phrases in in the ‘480 Patent, claims 2, 4, 5, 6 and 7, are in dispute. ShieldMark advances its proposed construction of those claims below.

### A. Claim 2

#### 1. *“Double Sided Adhesive Layer”*

The parties disagree as to the construction of the phrase “double sided adhesive layer” as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| “double sided adhesive layer” in claim 2 | “a substrate having adhesive on opposing or both surfaces” | “a layer with adhesive on both sides” |

The essence of the dispute is over InSite’s improper attempt to include a “substrate” to the claimed double sided adhesive layer. In other words, InSite wants the

Court to read the claim term "double sided adhesive layer" as actually being three layers – a substrate (typically cloth or other supporting material) sandwiched between a top and bottom adhesive layer.  This proposed construction improperly reads limitations into the claim.

ShieldMark believes that the claim term "double sided adhesive layer" meaning "a layer with adhesive on both sides" is supported by the descriptions in the '480 Patent itself.  At Column 1, lines 47-49, the specification describes: "The adhesive tape of this invention usually comprises a layer of polymeric material and at least <u>one layer of adhesive material</u>."  '480 Patent, Column 1, lines 47-49 (emphasis supplied).  Additionally, at Column 1, lines 59-63, the specification refers to the figure reproduced below:

**FIGURE 1**



The specification describes the figure as "an example of the pressure-sensitive adhesive tape of this invention wherein a layer of polymeric material (1) is attached to <u>the top side of a layer of pressure-sensitive adhesive</u> material (2) and a laminating substrate (3) is attached to <u>the bottom side of the pressure-sensitive adhesive</u> material."  '480 Patent, Column 1, lines 59-63 (emphasis supplied).  In other words, the adhesive layer identified by the reference number (2) is <u>not</u> described as having an intermediate "substrate" as proposed by InSite.  Rather, the adhesive (2) is described as itself being sandwiched between the polymeric hard plastic top layer identified by reference number (1) and the laminating substrate identified by reference number (3).  Moreover as emphasized above,

6

the adhesive (2) is described as having a "top side" and a "bottom side" – in other words "double sided" as claimed.

The '480 Patent itself has further support for ShieldMark's construction, "a layer with adhesive on both sides."  Under the doctrine of claim differentiation, claims in a patent are deemed to have differing scope. See, *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) ("The doctrine of claim differentiation 'create[s] a presumption that each claim in a patent has a different scope.' "). Therefore a proposed construction that renders two claims identical is less likely to be correct. Reading a "substrate" into the adhesive layer of claim 2 would improperly equate claim 2 and claim 11.  Specifically, when ShieldMark intended to call for a substrate, for example, in the form of a double sided carpet tape (column 2, lines 39-40), it expressly claimed "a rubberized double-sided tape." See, e.g. claim 11. Indeed, the example in the specification discussing a double sided carpet tape was exemplary only and the specification further explained that "…the foregoing description, including the examples, shall be interpreted as illustrative and not in a limiting sense." Column 4, lines 12-16 (emphasis added).

The prosecution history further supports ShieldMark's proposed construction. For example, while the application was under review at the Patent Office, the Patent examiner construed the term "double sided adhesive layer" as any layer of adhesive having two sides, each side having adhesive properties.  See, Exhibit A-2, Office Action dated April 6, 2011, pg. 2, note 1. This construction notably does not read in any substrate as proposed now by InSite.  Instead, it aligns with ShieldMark's proposal: "a layer with adhesive on both sides."

For the foregoing reasons, in accordance with the specification and prosecution history, the phrase "double sided adhesive layer" should be construed as "a layer with adhesive on both sides."

2. *"Substantially Continuous Contact"*

The parties disagree as to the construction of the phrase "substantially continuous contact" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substantially continuous contact" in claim 2 | "substantially uninterrupted contact" | "largely but not wholly uninterrupted contact" |

In context, the phrase "substantially continuous contact" describes the manner in which the double sided adhesive layer contacts the polymer layer.  The dispute centers around construction of the term "substantially" as the parties appear to agree that "continuous" may be construed as "uninterrupted" and that "contact" needs no construction.  As will be seen below, ShieldMark construes the term "substantially" consistently throughout the other claims using the term while the InSite sometimes takes "substantially" for face value, and other times proposes constructions, despite the fact that claim terms are normally used consistently throughout the patent, and the usage of a term in one claim can often illuminate the meaning of the same term in other claims. See *Rexnord Corp. v. Laitram Corp*., 274 F.3d 1336, 1342 (Fed.Cir.2001); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed.Cir.1997).

The specification does not use the term "substantially" other than with respect to improved performance of the example tape undergoing several tests.  See, e.g. Exhibit A-1, column 2, line 65; column 3, lines 7 and 23.  The phrase "substantially continuous contact" was not well developed or discussed during prosecution.  Thus, ShieldMark

resorts to a dictionary definition of the term initially propounded by InSite in its proposed constructions. Specifically, "substantially" means "being largely but not wholly that which is specified." See, Exhibit A-3, pages 11 and 13; see also Exhibit A-4-a, http://www.merriam-webster.com/dictionary/substantial, definition 5. Thus, the phrase "substantially continuous contact" should be construed as "largely but not wholly uninterrupted contact."

### B. Claim 4

#### 1. *"Substantially Planar Floor"*

The parties disagree as to the construction of the phrase "substantially planar floor" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substantially planar floor" in claim 4 | "a largely flat surface on which items or people may be supported." | "largely but not wholly flat floor" |

The starting point is the language of claim 4 itself. See, *Phillips*, 415 F.3d at 1317. Nothing in the language of claim 4 requires the surface to support items or people. The only word directly modifying "floor" is "planar," which in no way requires or implies the ability of the surface to support items or people. The absence of any requirement that the referenced floor be capable of supporting items or people in the claim itself suggests that ShieldMark in no way meant to limit the floor in claim 4 to surfaces capable of supporting items or people, as opposed to all "floor" surfaces. The Federal Circuit has made clear that "one of the cardinal sins of patent law ... [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319–20; see also *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1376 (Fed.Cir.2006) ("As noted, this court has repeatedly rejected the contention that depiction of a single embodiment in a patent

9

necessarily limits the claims to that depicted scope.").  A greater sin of patent law may be reading in a limitation not even suggested by the written description – "items or people" - as proposed by InSite here.

The extrinsic evidence also supports ShieldMark's proposed construction. The Merriam-Webster dictionary defines "substantially" as "being largely but not wholly that which is specified" and "planar" as "of, relating to, or lying in a plane", which "plane" is in turn defined as "a flat or level surface." See Exhibit A-4-a. Therefore, a person of ordinary skill in the art would construe "substantially planar floor" consistent with ShieldMark's proposed definition, and not include the additional limitation of a "surface capable of support items or people" as InSite advocates. Since the term can be readily understood by artisans and laypersons, no construction is believed necessary. In the event the Court decides construction is necessary, the term may be construed as "largely but not wholly flat floor."

## C. Claim 5

### 1.  *"Substantially Uniform Thickness"*

The parties disagree as to the construction of the phrase "substantially uniform thickness" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substantially uniform thickness" in claim 5 | "all measurements are the same or within a narrow range; there are no intentional significant deviations or steps in the thickness of the polymer layer from one edge to the other or in the longitudinal direction" | "largely but not wholly same distance between the upper surface and the lower surface without protrusions or steps" |

Here the dispute is over how "uniform" the thickness must be.  In the context of claim 5, the "substantially uniform thickness" is used to refer to the thickness of the polymer layer.  Notably, InSite's proposed construction of a clear, three word phrase

using everyday words takes twelve times as many words – many of which require construction themselves. ShieldMark proposes a construction only to counter Defendant's attempt to load the phrase beyond recognition.

The phrase "substantially uniform thickness" does not appear in the specification, although the Figure shows a polymer layer (1) appearing to have a largely uniform thickness.  Early in the prosecution, the phrase "substantially uniform" was added to the claim that eventually issued as claim 5.  The addition occurred in response to a rejection in light of U.S. Patent Number 5,839,977 to Maurer (hereafter the "Maurer reference").  The portion of the Maurer reference relied upon by the office is the so-called "stepped" applique for hockey sticks.  The relevant figure 14 is reproduced below:

The Maurer reference describes the applique as including three steps identified by reference numbers 108, 110 and 112 although not all of the steps met the claimed thickness limitation.  In response, ShieldMark amended the claim to call for a "substantially uniform thickness" and argued that the abruptly increasing thicknesses of the steps 108, 110 and 112 failed to anticipate the amended claim.  See, Exhibit A-2, Amendment B and Response to Office Action dated January 12, 2006, pg. 5.  This amendment was found persuasive.

FIG. 14

In a subsequent rejection, the office used a different figure to show the "substantially uniform thickness."  The office determined that it would be obvious to modify an applique with "protrusions" 62 by removing the



FIG. 7

11

protrusions to arrive at the recited "substantially uniform thickness."  ShieldMark again argued and overcame the rejection, in part, by equating "removing the protrusions" with the "substantially uniform thickness…."  See, Exhibit A-2, Pre-Appeal Request for Review dated June 22, 2006, pg. 2.

These efforts overcoming the Maurer reference form the basis of the portion of ShieldMark's proposed construction "without protrusions or steps."  The balance of ShieldMark's proposed construction relies on a consistent construction of the term "substantially" as meaning "largely but not wholly" that of the thing specified and agreement with a construction of "thickness" as noted above in Section II if the Court determines the word "thickness" needs to be construed as "distance between the upper surface and the lower surface."

Accordingly, the Court should reject InSite's convoluted, excessively worded proposed construction and adopt ShieldMark's construction of the phrase "substantially uniform thickness" as "largely but not wholly same distance between the upper surface and the lower surface without protrusions or steps."

### D.  Claim 6

#### 1.  "Substrate"

The parties disagree as to the construction of the term "substrate" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substrate" in claim 6 | "a thin protective strip of material that is attached to adhesive to prevent the adhesive from undesirable adhering to items during storage transport; the strip is intended to be removed and thrown away; such is often referred to as a 'release liner'" | "layer" |

To begin, InSite's identification of the term "substrate" as needing construction is curious in that InSite proposed the word "substrate" in its construction of "adhesive layer" above in claim 2.  This suggests that clarity is not InSite's ultimate goal.

Starting with the language of the claim itself, nothing in the language of claim 6 requires the "substrate" layer to be a "release liner" or that it be "thin", "protective" or intended "to prevent the adhesive from undesirable adhering to items during storage transport", "removed" and/or "thrown away". The absence of any requirement that referenced the "substrate" layer be the equivalent of a "release liner" as defined by InSite suggests that ShieldMark in no way meant to limit the "substrate" in claim 6 to be a "release liner" as defined by InSite. As set forth above, the Federal Circuit has made clear that "one of the cardinal sins of patent law ... [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319–20.

ShieldMark further turns to the '480 Patent itself, Exhibit A-1, Column 1, lines 49-54, which states that: "[t]he pressure-sensitive adhesive tape of this invention is not limited to having only the above layers of polymeric materials and layer of pressure-sensitive adhesive material. It may optionally have an additional layer, such as a laminating substrate on an outermost side of the above adhesive layer."(emphasis added) ShieldMark asserts it can be readily understood that "substrate" in the context of this claim means an additional "layer."  It may be a layer that can be peeled away from the adhesive material in order to place the adhesive tape on a surface but it doesn't have to be.

Extrinsic evidence also supports ShieldMark's proposed construction. The website www.dictionary.reference.com defines "substrate" as "substratum", which is in

turn defined as "something that is spread or laid under something else; a stratum or layer lying under another." See, Exhibits A4-b and A-4-c. Therefore, a person of ordinary skill in the art would construe "substrate" consistent with ShieldMark's proposed definition, and not include the additional limitation of a "release liner" as defined by InSite.

### E.   Claim 7

#### 1.   *"Textured Surface"*

The parties disagree as to the construction of the phrase "textured surface" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "textured surface" in claim 7 | "a surface characteristic perceptible to ones touch; a tactile property of the surface that is rough or raised; not smooth to the touch" | "a surface characteristic perceptible to one's touch" |

Nothing in the language of claim 7 requires the "textured surface" to be "rough", "raised" or "not smooth" to the touch. The absence of any requirement that the referenced "textured surface"  be "rough", "raised" or "not smooth" to the touch in the claim itself suggests that ShieldMark in no way meant to limit the "textured surface" in claim 7 to be "rough", "raised" or "not smooth" to the touch as proposed by InSite. As set forth above, the Federal Circuit has made clear that "one of the cardinal sins of patent law ... [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319–20.

Extrinsic evidence also supports ShieldMark's proposed construction. The Merriam-Webster dictionary defines "texture" as "the visual or tactile surface characteristics and appearance of something."  See, Exhibit A-4-d. Therefore, a person of ordinary skill in the art would construe "textured surface" consistent with ShieldMark's

14

proposed definition, and not include the additional limitation of "rough", "raised" or "not smooth" as InSite advocates.

**V      CONCLUSION**

For all the foregoing reasons, ShieldMark respectfully requests that this Court adopt its proposed claim constructions, or adopt a variation of its constructions that are equivalent in scope and meaning.

Respectfully submitted,


_/s/ Martin J. Pangrace_
W. Scott Harders (#0070598)
Martin J. Pangrace (#0073857)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Telephone:      (330) 253-5060
Facsimile:      (330) 253-1977
E-Mail:          wsharders@bmdllc.com
                 mjpangrace@bmdllc.com

***Attorneys for Plaintiff, ShieldMark, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2012, a copy of the foregoing *Plaintiff's Opening Claim Construction Brief* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Martin J. Pangrace*

Martin J. Pangrace, Esq.

## LOCAL RULE 7.1(f) CERTIFICATION

I hereby certify that the foregoing above-captioned case pending in the United States District Court, Northern District of Ohio, Eastern Division, was assigned to the standard track, and that the foregoing *Plaintiff's Opening Claim Construction Brief* complies with all requirements of Local Rule 7.1(f).