IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO (CLEVELAND)

| | | |
|---|---|---|
| ShieldMark, Inc. | ) | |
| | ) | Case No.: 1:12-CV-00223-DCN |
| Plaintiff, | ) | |
| | ) | Judge Donald C. Nugent |
| v. | ) | |
| | ) | |
| InSite Solutions, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT INSITE'S RESPONSIVE BRIEF ON CLAIM CONSTRUCTION**

Now comes Defendant, InSite Solutions, LLC ("InSite"), in response to Plaintiff's Opening Claim Construction Brief (Doc. 42) regarding the construction to be given to claim terms at issue in this matter.

For the following reasons, offered in supplementation to Defendant InSite's Opening Brief on Claim Construction (Doc. 41), the Court should construe the claims as presented by InSite, following the proper rules of claim construction. As presented more fully below, Plaintiff, ShieldMark, Inc. ("ShieldMark"), has substantially ignored the express language of the terms in issue and has either requested that the Court impermissibly rewrite the claims or abandon the well settled rules of claim construction.

**I.     CONSIDERATION OF THE CONTESTED TERMS**

Below, InSite responds to the contentions of ShieldMark regarding the six contested terms. Without belaboring the record here, InSite adopts each of its contentions advanced in its opening brief (Doc. 41).

**A.  "Double Sided Adhesive Layer" (Claim 2)**

ShieldMark's construction of the term "double sided adhesive layer" of claim 2 as simply meaning "a layer with adhesive on both sides" amounts to nothing more than a rearrangement of the words of the term in issue.  In doing so, ShieldMark ignores the express language of that term and how the corresponding feature was treated in other claims.

As to the express language of the claim term, it is fundamental that claim construction begins with the language of the claim itself.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).  The specific claim language cannot be ignored as insignificant or immaterial.  *Perkin-Elmer v. Westinghouse Elec. Corp.*, 882 F.2d 1528, 1533, fn. 8 (Fed. Cir. 1987).  Similarly, consideration of different terms in other claims cannot be ignored, because it is presumed that different terms have different meanings.  *CAE Screenplates, Inc. v. Heinrich Fielder GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2007);  *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed. Cir. 1987).

To begin, every layer has two sides.  Accordingly, the express language of the phrase "double sided" must mean more than simply that the layer has two sides.  The express language of the claim term in issue is directed to a very specific adhesive layer - - commonly referred to by the modifier, "double sided."

After starting with the express language of the claim, the patent specification should be considered for further illumination.  *Markman v. Westview Instruments, Inc.*, 52 F. 3d 967, 979 (Fed. Cir. 1995)(*en banc*), Aff'd, 116 S.Ct. 1384, 1393 (1996).  Here, the specification removes all doubt.  The adhesive layer in the only embodiment of the invention presented in the specification is, in fact, a "double sided carpet tape" identified by manufacturer and

product number in the specification at Col. 2, ll. 39-43. The specification sheet for this very product (Doc. 41-4) expressly identifies this double sided tape as a "double coated cloth tape . . . manufactured on a blue polyethylene liner [i.e., substrate] . . . [u]sed widely for carpet installations." (Doc. 41-4). Simply put, a double sided adhesive layer, in the context of the '498 patent, is a special type of adhesive layer . . not simply "a layer that has adhesive on both sides." As apparent from the patent itself, and the double sided carpet tape disclosed therein, a "double sided adhesive layer" is "a substrate [such as cloth in the product specification (Doc. 41-4)] having adhesive on opposing or both sides."

Reference to other claims is also instructive as to the meaning of "double sided adhesive layer." Each of independent claims 1, 2 and 5 uses a different term to define the same corresponding feature. Claim 1 refers to "a layer of pressure sensitive adhesive . . . in . . . contact with the polymer layer." Claim 2 refers to a "double sided adhesive layer . . . in . . . contact with the . . . polymer layer." Claim 5 presents "a layer of adhesive attached to said polymer layer." Since the law presumes that different terms have different meanings, a "double sided adhesive layer" (claim 2) must necessarily be something other than "a layer of adhesive" (claim 5). Inherently, the "layer of adhesive" of claim 5 has two sides - - as does the thinnest conceivable layer. Accordingly, the "double sided adhesive layer" of claim 2 must mean more than simply that the adhesive layer has two sides. It does mean more! The double sided adhesive layer of claim 2 is what the '480 patent specification identifies at Col. 2, ll. 40-43 and describes in the specification sheet of Doc. 41-4. Indeed, it is "a substrate having adhesive on opposing or both surfaces," as described in the patent specification and as any rational person would understand.

ShieldMark should not be allowed to shrink from defining the words of the claim terms in issue.  While both parties agree that "adhesive" requires no definition in the context of the claim term, the word "layer" is deserving of the same definition for this term as in claim 6, where ShieldMark advances that "layer" means "substrate"!  Moreover, the term "a layer with adhesive on both sides" advanced by ShieldMark is somewhat circuitous.  A first question to ask is "on both sides" of what?  If it is "on both sides" of "a layer," then the question arises - -  what is a layer?  While ShieldMark does not want to admit it, the "layer" of its definition is a "substrate," as ShieldMark acknowledges with regard to claim 6.

ShieldMark's attempt at claim differentiation (ShieldMark Brief, p. 7) also fails.  Shieldmark suggests that "Reading a 'substrate' into the adhesive layer of claim 2 would improperly equate claim 2 and claim 11."  That is not true.  Claim 11 requires "a rubberized double-sided tape."  InSite does not propose that claim 2 be construed to include a "rubberized double-sided tape."  InSite advances "a substrate having adhesive on opposing or both surfaces."  The word "rubberized" is never mentioned or suggested.  Claims 2 and 11 are clearly differentiated from each other.

ShieldMark also improperly relies on the prosecution history (ShieldMark Brief, p. 7).  Resort to the prosecution history must properly focus on the statements and concessions of the patent applicant, not the patent examiner.  While patent examiners typically joust with patent applicants during prosecution, the courts are quick to caution that reliance cannot be placed on the examiner's activities:

> Because an examiner has the duty to police claim language by giving it the broadest reasonable interpretation, see *In re Hyatt*, 211 F.3d 1367, 1372, 54 USPQ 2d 1664, 1667 (Fed. Cir. 2000), it is not surprising that an examiner would not be satisfied with the applicant's insistence that particular claim language distinguishes a prior art reference, but that a court would later hold the patentee to the distinction he pressed during prosecution.

*Springs Window Fashion LP v. Novo Industries, L.P.*, 323 F.3d 989, 995 (Fed. Cir. 1990). See also *Greenliant Systems, Inc. v. Xicor LLC*, 692 F.3d 1261, 1271 (Fed. Cir. 2012; *In re Buzard*, 504 F.3d 1364, 1366-67) (Fed. Cir. 2007).

In sum, the Court should consider the express language of the claim term and each word thereof, and note the distinction between the term in issue and related terms of the other independent claims, with due regard to their differences. Resort should also be made to the specification, wherein the applicant clearly conveys that "a double sided adhesive layer" is "a substrate having adhesive on opposing or both surfaces."

**B. "Substantially Continuous Contact" (Claim 2)**

The parties appear to agree that the words "continuous contact" of the term "substantially continuous contact" may be construed to mean "uninterrupted contact." The dispute arises over the word "substantially."

Notably, the specification does not use the term "substantially," as acknowledged by ShieldMark. (ShieldMark Brief, p. 8). This alone demonstrates the invalidity of claim 2 under 35 U.S.C. §112, ¶2 and for the addition of new matter under 35 U.S.C. §112, ¶132. Indeed, the adhesive layer (2) shown in the drawing of the '480 patent is in complete and total contact with the polymer layer (1). There is simply no basis in the patent specification or drawing to claim that such contact is "largely but not wholly uninterrupted" as advanced by ShieldMark.

While the issue of the invalidity of claim 2, will be left for another day, it is fundamental that "claims are generally construed so as to sustain their validity, if possible." *Whittaker Corp. v. UNR Industries, Inc.*, 911 F.2d 709, 712 (Fed. Cir. 1990) (citation omitted). Accordingly, since there is absolutely no basis in either the patent specification or drawing

5

for the term "substantially," and even more so for the phrase "largely but not wholly," the word "substantially" should not be disturbed. Simply stated, the term "substantially continuous contact" should be construed as "substantially uninterrupted contact," giving that claim term its best (though minimal) chance of surviving a challenge as to its validity.

As presented in InSite's opening brief, the word "substantially" could be interpreted as "essentially," if the Court deems an interpretation necessary. What is abundantly clear, is the fact that neither the patent specification nor the drawing teaches or suggests interrupted contact of any sort, leaving ShieldMark's offering of "largely but not wholly uninterrupted contact" completely unsupported.

### C. "Substantially Planar Floor"

Here again, the term in issue was never used in the patent specification, is not apparent from the patent drawing, and was added to the claims after the application was filed - - signaling that claim 4 is invalid as a consequence. Simply put, there is no basis in either the patent specification or drawing for suggesting that the floor "is largely but not wholly flat" as advanced by ShieldMark. The only showing in the patent is of a totally flat surface. ShieldMark's use of the phrase "but not wholly flat," is totally unsupported by the patent specification and drawing. If the word "substantially" is to be defined, it may be defined either as "essentially," as above, or "largely." To expressly add "but not wholly" when that characteristic is nowhere shown or suggested in the patent, would give the claim little hope of surviving its next challenge - - that of invalidity. *Whittaker*, 911 F.2d, at 712.

ShieldMark further fails to offer a definition for the word "floor." That word is in contention, and is deserving of a definition. The term before the Court was not "substantially planar," but rather "substantially planar floor." Since the '480 patent repeatedly fails to use

the same terms in the patent specification that it chose to use in its claims, resort may appropriately be made to a dictionary. As presented in InSite's opening brief (Doc. 41, p. 10) an appropriate definition for a floor is a surface on which items or people may be supported. Accordingly, an appropriate definition or construction of the claim term in issue is either "a largely flat surface on which items or people may be supported," or "an essentially flat surface on which items or people may be supported."

### D. "Substantially Uniform Thickness" (Claim 5)

Once again, the patent specification never uses the phrase "substantially uniform thickness" apart from its appearance in claim 5. While the parties seem to agree that the definition must exclude "deviations or steps" (InSite) or "protrusions or steps" (ShieldMark), requiring that "all measurements are the same or within a narrow range" (InSite) is not the same as "largely but not wholly same distance" (ShieldMark).

InSite has expressly adopted the definition of "substantially uniform thickness" that was advanced by ShieldMark to the Patent Office during the prosecution of the '480 patent. ShieldMark cannot now adopt a different definition in court. ShieldMark's penchant for now using the phrase "largely but not wholly," flies in the face of the declaration of its expert that was presented to the Patent Office. Here, ShieldMark does not acknowledge, as its expert did before the Patent Office, that measurements of thickness of the polymer layer must be either the same or within a narrow range, and must do so far more than "largely" as now advanced by ShieldMark. Indeed, ShieldMark's expert stated that over 99% of all the areas of the sample were within a stated narrow range. (See InSite's opening brief, at page 11).

It is fundamental that a patentee cannot take one position in the Patent Office to obtain his patent and another before the court to enforce it. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

Consistent with ShieldMark's expert, the term "substantially uniform thickness" as used in claim 5 means that "all measurements are the same or within a narrow range; there are no intentional significant deviations or steps in the thickness of the polymer layer from one edge to the other or in the longitudinal direction."

### E. "Substrate" (Claim 6)

The "substrate" of claim 6 is identified rather particularly at Col. 1, ll. 52-65 of the '480 patent. The purpose in construing this claim term is simply to assist the jury in understanding the structure of claim 6. Every juror will understand what a release liner is. Anyone who has ever used an adhesive name tag at a gathering has experienced it. The patent makes it clear that this is what claim 6 is talking about - - and ShieldMark does not deny it. There is no need for making the jury's task more burdensome than by calling features with which they are keenly familiar by names with which they are unfamiliar. Telling a jury that the "substrate" of claim 6 is simply a "layer" would hardly help the jury in its understanding. A jury would better understand exactly what the substrate is - - -"a thin protective strip of material that is attached to adhesive to prevent the adhesive from undesirable adhering to items during storage transport; the strip is intended to be removed and thrown away; such is often referred to as a 'release liner'."

### F. "Textured Surface" (Claim 7)

ShieldMark's mantra that InSite is engaging a cardinal sin of patent law by "reading a limitation from the written description into the claims," could not be further from the truth. The written description of the '480 patent states simply "The outer surface of the layer of polymeric

8

material (1) is preferably textured." (Doc. 41-1, Col. 2, ll. 18-19). That is the sum and substance of the treatment that this sparse patent specification has given this feature. Notably, it is more attention than it gave other claim terms which give rise to contentions of patent invalidity. In any event, because of the deficiency of the specification, resort needs to be made to dictionaries. Here, the parties are actually in some accord - - although ShieldMark's offering of "a surface characteristic perceptible to one's touch" does not go far enough. A totally smooth surface would be "perceptible to one's touch," but would never be considered "textured." That is the substantive difference between the offerings of the two parties. Clearly, a "textured surface" is "a surface characteristic perceptible to one's touch; a tactile property of the surface that is rough or raised; not smooth to the touch."

## II.  CLAIM TERMS NOT IN CONTENTION

There remain seven claim terms upon which the parties have reached agreement as to their construction, but for which ShieldMark asserts they "can be readily understood by artisans and laypersons and no construction is believed necessary." This issue is treated on pages 13-16 of InSite's opening brief. (Doc. 41). For the reasons presented in that opening brief, because these seven claim terms are at issue, the Court must construe them, and InSite requests that the constructions be as set forth on page 15 of its opening brief, such constructions having been agreed upon by the parties.

## CONCLUSION

In light of the foregoing, it is requested that the Court adopt the claim constructions advanced by InSite for the six (6) contested terms and that the Court adopt the constructions agreed upon by the parties for the other seven (7) terms in issue. At the very least, InSite urges

9

that any deviation from its proffers be consistent with the context of the claim in which they appear.

Respectfully submitted,

s:/Ray L. Weber
Ray L. Weber         (0006497)
Laura J. Gentilcore  (0034702)
Mark L. Weber        (0072078)
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, Ohio 44308
Telephone: (330) 376-1242
Email: rlweber@rennerkenner.com

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2012 the foregoing **DEFENDANT INSITE'S RESPONSIVE BRIEF ON CLAIM CONSTRUCTION** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Ray L. Weber