**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ShieldMark, Inc. | ) | CASE NO. 1:12-CV-00223-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | **PLAINTIFF'S RESPONSIVE BRIEF** |
| | ) | **TO DEFENDANT'S OPENING BRIEF** |
| InSite Solutions, LLC. | ) | **ON CLAIM CONSTRUCTION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, ShieldMark, Inc. ("ShieldMark") submits the following Responsive Brief to Defendant's Opening Brief on Claim Construction pursuant to this Court's Case Management Order of May 18, 2012 (Doc #25) and as required under Local Patent Rule 4.4(b).

## I.  INTRODUCTION

The majority of the claim terms and phrases which the Defendant asserts need construction are not complex, ambiguous, or even technical. The disputed claim phrases do not reflect a special jargon or lexicon that is particular to only the art or field at issue. Rather, the claim terms proposed by InSite for construction are commonly used and commonly understood words.  InSite has requested that this Court define these terms in order to seek a ruling <u>avoiding</u> the clear meaning of these simple claim terms as opposed to a legitimate interpretation. Each construction proposed by the Defendant imposes one or more limitations simply not found in the claim at issue or in the '480 Patent. InSite will undoubtedly then argue that these extraneous limitations result in their products not infringing the '480 Patent. Fortunately, the Federal Circuit clearly prohibits introducing non-present limitations into a patent via claims construction.

In addition to introducing extraneous limitations, InSite's proposed constructions will likely confuse, rather than assist a jury in understanding the patent claim at issue. Contrasted with the clear understandable terms used in the '480 Patent, InSite urges this Court to adopt confusing, conflicting, and convoluted definitions. The Federal Circuit routinely admonishes district courts to avoid such constructions. Because the '480 Patent means what it clearly says the Court should decline to adopt the claim constructions requested by the Defendant.

## II. THE APPLICABLE STANDARD

Determining the meaning of the claims of a patent -- "claim construction" -- is exclusively a matter for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). As the Federal Circuit observed in its en banc opinion in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005), "there is no magic formula or catechism for conducting claim construction." Id. at 1324. Rather, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Claim construction should initially focus on the words of the claim itself because "the claims themselves provide substantial guidance as to the meaning of the particular claim terms." *Phillips*, 415 F.3d at 1312 (internal quotation marks omitted). Claim terms should not be construed in isolation, but read "not only in the context of a particular claim, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Indeed, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning

2

of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If the specification reveals that the patentee has assigned a special meaning to a claim term, the patentee's lexicography governs. *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). In addition, claim terms should be construed consistently within the same patent, in each instance, absent evidence to the contrary. *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999). The claim terms and patent specification are referred to as "intrinsic evidence" in the claim construction process. *Markman*, 52 F.3d at 979.

Generally, words used in a claim are deemed to have their ordinary and customary meaning as understood by one of ordinary skill in the art. *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999). Sometimes, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "To help inform the court of the ordinary meaning of the words, a court may consult a dictionary, encyclopedia, or treatise." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003); see also *Markman*, 52 F.3d at 979. "If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002). Dictionary definitions, however, "may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification

3

or file history." *Bell Atl. Network Servs., Inc. v. Covad Commun. Group, Inc.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001).

### III. CLAIM TERM DEFINITIONS FOR THE '480 PATENT

As set forth in ShieldMark's Opening Claim Construction Brief (Doc# 42), which is incorporated by reference herein, the meaning of the following phrases in the '480 Patent, claims 2, 4, 5, 6 and 7, are in dispute.

#### A. Claim 2

*1. "Double Sided Adhesive Layer"*

The parties disagree as to the construction of the phrase "double sided adhesive layer" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "double sided adhesive layer" in claim 2 | "a substrate having adhesive on opposing or both surfaces" | "a layer with adhesive on both sides" |

This Court should reject InSite's attempt to add the limitation of a "substrate" to the claimed double sided adhesive layer.

It is improper for a court to add limitations from an example in the specification into a claim term offered for construction. *Philips*, 415 F.3d at 1303, 1312 (citing *McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116, 16 S.Ct. 240, 40 L.Ed. 358 (1895) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim ..., we should never know where to stop")). Moreover, even though a specification may describe a very specific embodiment of the invention, it is improper to "confin[e] the claims to those embodiments. In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be

4

construed as being limited to that embodiment." *Philips*, 415 F.3d at 1323 (internal citations omitted).

InSite argues that the Court should read the claim term "double sided adhesive layer" as actually being <u>three</u> layers – a substrate (typically cloth or other supporting material) sandwiched between a top and bottom adhesive layer. This proposed construction improperly reads limitations into the claim and should be rejected by the Court. InSite's primary argument in favor of reading the word "substrate" into the claim is that the issued patent specification describes an example of an adhesive as a particular carpet tape from International Tape Co. The single embodiment described is so important to InSite's position that InSite argues the point twice and goes to the length of adding an unauthenticated web page from the International Tape Co. in support.

On the other hand, as set forth in ShieldMark's Opening Claim Construction Brief (Doc# 42) and not repeated here for brevity, the phrase "double sided adhesive layer" is readily understood as being merely a "layer with adhesive on both sides" without violating any tenants of claim construction.

For the foregoing reasons, in accordance with the specification and prosecution history, the phrase "double sided adhesive layer" should be construed as "a layer with adhesive on both sides."

2. *"Substantially Continuous Contact"*

The parties disagree as to the construction of the phrase "substantially continuous contact" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substantially continuous contact" in claim 2 | "substantially uninterrupted contact" | "largely but not wholly uninterrupted contact" |

InSite first identified the phrase "substantially continuous contact" as requiring the Court's attention. InSite's position appears to have evolved in that it now argues that the phrase using common, well understood words has only a single word needing construction – "continuous." InSite's evolution has been inconsistent, however. ShieldMark construes the term "substantially" consistently in each instance throughout the several other claims using the term. InSite, on the other hand, will occasionally take "substantially" at face value and in other claims propose an alternative construction to suit its future non-infringement or invalidity positions. (Compare InSite's proposed construction of "substantially continuous contact" and "substantially planar floor"). InSite's insincere and inconsistent approach to the construction of the term "substantially" is directly contrary to the well established principle that claim terms are normally used consistently throughout the patent and should be rejected by this Court. See *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir.2001); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed.Cir.1997).

Because adopting Defendant InSite's position would result in the term "substantially" meaning different things in different claims, it cannot be correct. *Philips*, 415 F.3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.") ShieldMark, differently, has proposed application of a dictionary definition of the commonly understood word "substantially," that is, "being largely but not wholly that which is specified" be utilized to eliminate any ambiguity. *Philips*, 415 F.3d at 1314 ("In some cases [] claim construction [] involves little more than the

6

application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful.")(Internal citation omitted).

For the foregoing reasons, in accordance with the intrinsic and extrinsic evidence, the phrase "substantially continuous contact" should be construed as "largely but not wholly uninterrupted contact."

### B. Claim 4 *"Substantially Planar Floor"*

The parties disagree as to the construction of the phrase "substantially planar floor" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substantially planar floor" in claim 4 | "a largely flat surface on which items or people may be supported." | "largely but not wholly flat floor" |

InSite's attempts to confuse rather than clarify are nowhere more evident than here. Incredibly Defendant InSite proposes that the word "floor" needs construction, and in this instance, also that the word "substantially" <u>does</u> need to be construed.

The term "floor" for which InSite proposes construction is not complex, ambiguous, or technical. The term "floor" does not reflect a special jargon or lexicon that is particular to only the art or field at issue. Rather, it is a commonly used and commonly understood word. Where the meaning of a claim term is "clear and self-explanatory," the term does not need interpretation. *Spinal Concepts, Inc. v. EBI, L.P.*, 2004 WL 5680799, *5 (W.D. Texas April 13, 2004); see also *Liquid Dynamics Corp. v. Vaughan Co.*, 2002 WL 1769979, *6 (N.D. Ill. Aug. 1, 2002), vac'd on other grounds, 355 F.3d 1361 (Fed. Cir. 2004)(claim construction unnecessary where term was unambiguous).

More problematic, the construction urged by InSite imposes limitations simply not found in the claim at issue or the '480 patent. Nothing in the language of claim 4 requires the surface to support items or people. The only word directly modifying "floor" is "planar," which in no way requires or implies the ability of the surface to support items or people. The absence of any requirement that the referenced floor be capable of supporting items or people in the claim itself suggests that ShieldMark in no way meant to limit the floor in claim 4 to surfaces capable of supporting items or people, as opposed to all "floor" surfaces.

As to the word "substantially," InSite has rejected its own earlier proposed dictionary definition of the term meaning "being largely but not wholly that which is specified" and now truncates the construction of "substantially" to "largely".

For the reasons set forth above and in Plaintiff's Opening Brief, the phrase "substantially planar floor" should be construed as "largely but not wholly flat floor."

### C. Claim 5 *"Substantially Uniform Thickness"*

The parties disagree as to the construction of the phrase "substantially uniform thickness" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substantially uniform thickness" in claim 5 | "all measurements are the same or within a narrow range; there are no intentional significant deviations or steps in the thickness of the polymer layer from one edge to the other or in the longitudinal direction" | "largely but not wholly same distance between the upper surface and the lower surface without protrusions or steps" |

Here "substantially uniform thickness" is used to refer to the thickness of the polymer layer. Once again, although Defendant InSite has previously proposed that the term "substantially" in Claim 2 does not need construction, InSite now asks the Court to interpret "substantially" for this clause. Did InSite forget what "substantially" means?

8

The Federal Circuit states that "words of approximation such as 'generally' and 'substantially' are descriptive terms 'commonly used in patent claims to avoid a strict numerical boundary to the specified parameter." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298 (Fed. Cir. 2003). It is clear InSite wishes to unduly limit this phrase as it has with its other proposed claim constructions. ShieldMark has consistently proposed that the dictionary definition of the term meaning "being largely but not wholly that which is specified" be utilized to eliminate any ambiguity. Additional language regarding "without protrusions or steps" is derived from ShieldMark's successful effort to overcome prior art references during prosecution.

InSite points to the Declaration of ShieldMark's expert J. Mausar during prosecution as evidence that a very tight tolerance is required to meet the uniformity requirement. The reliance on the Mausar Declaration for this construction is misplaced. First, the Mausar Declaration was provided not to show the required degree of uniformity, but rather to show to the patent examiner that the claim term met technical requirements that one skilled in the art would understand that ShieldMark possessed the substantially uniform thickness layer claimed. In this effort, expert Mausar looked to the specification and opined that someone skilled in the art reading the description of the uniformity actually achieved in the test samples would understand that ShieldMark possessed the invention claimed. See, Amendment C and Response to Office Action dated November 23, 2010.

Secondly, the Mausar Declaration actually supports ShieldMark's proposed construction and consistent use of the "largely but not wholly" construction for the term "substantially." In the passage cited by Defendant InSite, Mausar describes a largely but

9

not necessarily wholly uniform thickness. Nothing in the language of claim 5, the Mausar Decalration or the prosecution history requires that there be no "intentional significant deviations" in the thickness of the polymer layer or that the thickness be measured exclusively "from one edge to the other or in the longitudinal direction." The absence of these requirements suggests that ShieldMark in no way meant to limit the "substantially uniform thickness" in claim 5 to "unintentional" variations or to a "longitudinal" thickness from edge to edge as opposed to a "latitudinal" thickness from end to end. Furthermore, InSite's proposed construction of a clear, three word phrase with a paragraph containing technical terms and jargon will likely confuse, rather than assist, a jury in understanding the patent claim at issue. Contrasted with the clear understandable terms used in the '480 Patent and the construction proposed by ShieldMark, InSite urges this Court to adopt confusing, conflicting, and convoluted definitions. The Federal Circuit routinely admonishes district courts to avoid such constructions. See, *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1322 (Fed.Cir.2004) ("Similarly, it is not necessary for a court to conduct an explicit claim construction if the claim construction issue is a simple one that needs no analysis, or in which there is no reasonable ground for dispute as to claim meaning.")

Accordingly, the Court should reject InSite's convoluted, excessively worded proposed construction and adopt ShieldMark's construction of the phrase "substantially uniform thickness" as "largely but not wholly same distance between the upper surface and the lower surface without protrusions or steps."

### D. Claim 6 *"Substrate"*

The parties disagree as to the construction of the term "substrate" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "substrate" in claim 6 | "a thin protective strip of material that is attached to adhesive to prevent the adhesive from undesirable adhering to items during storage transport; the strip is intended to be removed and thrown away; such is often referred to as a 'release liner'" | "layer" |

As with the term "substantially", InSite repeatedly shifts its position as to whether the term "substrate" must be construed. InSite originally proposed that the word "substrate" be included without further definition in its construction of "adhesive layer" above in claim 2. InSite now asks the Court to provide a definition of "substrate" for this claim and suggests an entire paragraph for the single word. This is calculated to confuse and improperly risks different meanings for the same words.

On the other hand, as set forth in Plaintiff's Opening Claim Brief (Doc # 42) ShieldMark's proposed construction of simply "layer" is fully supported by the intrinsic and extrinsic evidence and complies with the Federal Circuit's tenants of claim construction.

### E. Claim 7 *"Textured Surface"*

The parties disagree as to the construction of the phrase "textured surface" as outlined below:

| Claim Term | InSite | ShieldMark |
|---|---|---|
| "textured surface" in claim 7 | "a surface characteristic perceptible to ones touch; a tactile property of the surface that is rough or raised; not smooth to the touch" | "a surface characteristic perceptible to one's touch" |

11

As with many prior phrases that Defendant has decided need to be construed by the Court, this phrase is readily understandable.  Defendant InSite's wordy definition does nothing to clarify and instead obscures the meaning of everyday words.  Nothing in the language of claim 7 requires the "textured surface" to be "rough", "raised" or "not smooth" to the touch.  The absence of any requirement that the referenced "textured surface" be "rough", "raised" or "not smooth" to the touch in the claim itself suggests that ShieldMark in no way meant to limit the "textured surface" in claim 7 to be "rough", "raised" or "not smooth" to the touch as proposed by InSite.  The definition proposed by InSite actually excludes numerous surface characteristics that might be perceptible to one's touch and that would be considered a "textured surface", such as "indented", "stepped", "plush", "grainy", "curved", "furry", "soft", or even "smooth".  As set forth above, the Federal Circuit has made clear that "one of the cardinal sins of patent law ... [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319–20.  Here the additions are not even from the description – they are invented from whole cloth.

### F.  Agreed Upon Claims

InSite has offered several other claim terms for construction that the parties were able to agree upon, should the Court decide construction is necessary.  InSite however overstates the Court's obligation to construe claims just because the Defendant has identified a term or phrase.  In *Neev v. Abbott Med. Optics, Inc.*, CIV. 09-146 RBK, 2012 WL 1066797 (D. Del. Mar. 26, 2012), a district court facing a similar situation declined to impose the Defendant's suggested limitations on several claim terms instead leaving the claim language to speak for itself.  "District courts are not (and should not be)

required to construe every limitation present in a patent's asserted claims." *Neev*, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed.Cir.2008).

Here even the so-called agreed upon claims are readily understandable. Defendant's attempt to force constructions of such common-place terms as "thickness," "peeling the tape at a 90 degree angle" "allowing a dwell time of one hour" and others noted in the Opening Briefs should be refused.

## IV. CONCLUSION

For each of the reasons discussed above, the Court should reject InSite's proposed definitions which violate the rules of claim construction and adopt the Plaintiff's proposed constructions.

Respectfully submitted,

   */s/ Martin J. Pangrace*
W. Scott Harders (#0070598)
Martin J. Pangrace (#0073857)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH 44308
Telephone: (330) 253-5060
Facsimile: (330) 253-1977
E-Mail: wsharders@bmdllc.com
     mjpangrace@bmdllc.com

*Attorneys for Plaintiff, ShieldMark, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of November, 2012, a copy of the foregoing *Memorandum in Opposition to Defendant's Motion for Claim Construction* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> /s/ Martin J. Pangrace
> Martin J. Pangrace, Esq.

**LOCAL RULE 7.1(f) CERTIFICATION**

I hereby certify that the foregoing above-captioned case pending in the United States District Court, Northern District of Ohio, Eastern Division, was assigned to the standard track, and that the foregoing *Memorandum in Opposition to Defendant's Motion for Claim Construction* complies with all requirements of Local Rule 7.1(f).