**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHIELDMARK, INC. | ) | CASE NO. 1:12-CV-00223-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN OPPOSITION TO** |
| INSITE SOLUTIONS, LLC | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT OF NON-** |
| Defendant. | ) | **INFRINGEMENT** |

Plaintiff ShieldMark, Inc. ("ShieldMark"), by and through undersigned counsel, respectfully submits the following *Memorandum in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement* ("Memorandum") in response to InSite Solutions, LLC's ("InSite") Motion for Summary Judgment of Non-Infringement ("Motion").

In addition to this Memorandum, ShieldMark's Opposition is supported by the following evidentiary materials which are incorporated by reference herein: 1) the Declaration of Clifford A. Lowe (*See* Doc# 59-1); 2) the Declaration of Cheryl A. Saqqa (*See* Doc# 12-2); 3) the prosecution history of the '480 Patent (*See* Doc# 42-3); the '480 Patent, (*See* Doc# 4-1); the Declaration of Jerry M. Serra, PH.D. (*See* Doc# 36-1); Defendant's Motion for Summary Judgment of Non-Infringement (*See* Doc# 59); Plaintiff's Opening Claim Construction Brief, (*See* Doc# 42); Memorandum and Order (*See* Doc# 54); and Amended Complaint for Patent Infringement (*See* Doc# 4).

Respectfully submitted,


/s/Martin J. Pangrace
W. Scott Harders (#0070598)
Martin J. Pangrace (#0073857)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Telephone: (330) 253-5060
Facsimile:  (330) 253-1977
E-Mail:  wsharders@bmdllc.com
          mjpangrace@bmdllc.com


/s/ Susan L. Gragel
Susan L. Gragel (#0002785)
**GOLDSTEIN GRAGEL LLC**
526 Superior Avenue, East, Suite 1040
Cleveland, OH  44114
Telephone: (216) 771-6633
Facsimile:  (216) 771-7559
E-Mail:  sgragel@ggcounsel.com


/s/ Mark B. Cohn
Mark B. Cohn (#0027878)
**DUBYAK CONNICK THOMPSON &
BLOOM, LLC**
3401 Enterprise Pkwy., Suite 205
Cleveland, OH  44122
Telephone: (216) 364-0500
Facsimile:  (216) 364-0505
E-Mail:  mark@markcohnlaw.com

*Attorneys for Plaintiff, ShieldMark, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................II

I.    STATEMENT OF ISSUES TO BE DECIDED ...................................................1

II.    SUMMARY OF ARGUMENT PRESENTED ....................................................1

III.    LAW & ARGUMENT.........................................................................................3

    A.  Summary Judgment Standard .................................................................3

    B.  The Law of Patent Infringement ...........................................................4

    C.  The Accused Products Infringe the '480 Patent, Either Literally or Under the
Doctrine of Equivalents. ........................................................................5

        1.  The Accused Products Manufactured and Sold by InSite Literally
Infringe Claim 5 of the '480 Patent. .............................................. 5

        2.  Patent Prosecution History Estoppel Does Not Bar the Application of the
Doctrine of Equivalents to the Asserted Claim 2....................................... 9

            a.  The Asserted Claim Was Not Narrowed By Amendment ........................... 10

            b.  Even If The Court Determines There Was A Narrowing Amendment,
The Reason For The Amendment Was Not Substantially Related To
Patentability. ..................................................................................... 13

        3.  The Accused Products Manufactured and Sold by InSite Infringe the '480
Patent under the Doctrine of Equivalents. ............................................ 14

            a.  Function performed................................................................. 15

            b.  Means by which function is performed. ...................................... 15

            c.  Result achieved.................................................................... 16

    D.  ShieldMark May Enforce Its Provisional Rights ...........................................16

IV.    CONCLUSION.................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ........................................... 3

*Bai v. L&L Wings, Inc*., 160 F.3d 1350, 1353 (Fed Cir. 1998) .................................... 4

*Baran v. Medical Device Technologies, Inc.*, 519 F.Supp.2d 698, 714 (2007) ................ 8

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed.Cir.1997) ................ 18

*Cyber Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) ........................... 4

*Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948) ............................................... 8

*Festo v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 556, 558, 567-8, 573, 586
    (Fed. Cir. 2000) .............................................................................. 10, 13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-7
    (Fed. Cir. 2003) .............................................................................. 10, 13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd*, 535 U.S. 722, 735, 737-8, 740
    (2002) .................................................................................................... 9, 13

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114
    (Fed. Cir. 1999) ...................................................................................... 9

*First National Bank v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575,
    20 L.Ed.2d 569 (1968) ........................................................................... 4

*Funai Electric Co. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1365, 1367-1370
    (Fed. Cir. 2010) ..................................................................................... 11

*Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) ............... 5, 15

*Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977, 1 USPQ2d 1202, 1207-08
    (Fed.Cir.1986) ...................................................................................... 19

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998)..................... 18, 19

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) ............... 4

*Mineo, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1115 (Fed. Cir. 1996) .............. 17

*Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ......... 4

*Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486,
    7 L.Ed.2d 458 (1962) ............................................................................. 4

*Prestige Pet Products, Inc. v. Pingyang Huaxing Leather & Plastic Co. Ltd.*,
    767 F.Supp.2d 806, 812 (E.D. Mich. 2011) ............................................... 18

*Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827-28, 221 USPQ
    568, 575 (Fed.Cir.1984) ......................................................................... 18

*Slimfold Mfg. Co. v. Kindead Indus., Inc.*, 810 F.2d 1113, 1115-1116
    (Fed. Cir. 1987) ................................................................................ 17, 18

*Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306-07
    (Fed.Cir.1989) ................................................................................. 18, 19

*United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ...................... 3

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000) ............. 5

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996) .............................. 18

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 40-41 (1997) ................. 5, 15

**Statutes**

35 U.S.C. § 112 ...................................................................................................... 17

35 U.S.C. § 154(d) .................................................................................... 16, 17, 18

35 U.S.C. § 252 ...................................................................................................... 17

35 U.S.C. § 271(a) ................................................................................................... 4

Fed.R.Civ.P. 56(c) .................................................................................................. 3

**Treatises**

MPEP, 8th ed., rev. 1 § 2111.03 (2003) .................................................................. 8

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT OF NON-INFRINGEMENT**</u>

**I.     STATEMENT OF ISSUES TO BE DECIDED**

    A.  Whether Defendant InSite Solutions, LLC ("InSite") Has Shown That There Are No Genuine Issues of Material Fact and That It is Entitled to Judgment As a Matter of Law.

    B.  Whether InSite Has Established That The Products Made, Used, Sold Or Offered For Sale By InSite, Including "Superior Mark Tape" (the "Accused Products") Do Not Literally Infringe On Claim 5 Of The '480 Patent As A Matter Of Law.

    C.  Whether Application of the Doctrine of Equivalents is Barred By Prosecution History Estoppel.

        1.  Whether the claim element sought to be satisfied by the Doctrine of Equivalents was the subject of a narrowing amendment during prosecution.
        2.  If so, whether the amendment was made for a reason related to patentability.

    D.  Whether Plaintiff ShieldMark, Inc. ("ShieldMark") May Enforce Its Provisional Rights.

**II.     SUMMARY OF ARGUMENT PRESENTED**

As this Court is well aware, ShieldMark manufactures an adhesive tape to be used as an alternative to painted floor lines for use in industrial environments. U.S. Patent No. 8,088,480 ("the '480 Patent") is known in the industry as "Mighty Line". InSite is a former distributor of "Mighty Line". As a distributor of ShieldMark's products, InSite had access to inside information on ShieldMark's patented technology and pricing information, and used this information to become a direct competitor of ShieldMark by manufacturing knock-off adhesive tapes for floor marking under the name "Superior Mark".

InSite's Motion for Summary Judgment for Non-Infringement ("Motion") is entirely unwarranted and should be denied.  InSite's Motion conclusively argues that there is no set of

1

facts demonstrating it has infringed on the '480 Patent because the Accused Products do not literally infringe on Claims 2 and 5 of the '480 Patent and because InSite argues that ShieldMark is summarily estopped from asserting infringement under the doctrine of equivalents based on InSite's unsubstantiated allegation that prosecution history estoppel applies. InSite is wrong with respect to each of these arguments. To the contrary, it is ShieldMark, not InSite that is entitled to summary judgment with respect to infringement of Claim 5. Even if ShieldMark were not entitled to summary judgment, there are, at the very least, numerous issues of material fact which remain to be decided by a jury.

The Accused Products overall meet the claim limitations of Claim 5. The "edge feature" of the Accused Products, touted by InSite as "significant", accounts for less than five percent (5%) of InSite's Accused Product. The presence of an additional edge feature does not save a finding of infringement because the open ended claim language "comprising" permits such an additional feature.

With respect to Claim 2, InSite has offered virtually no analysis whatsoever and relies entirely on its conclusory assertion that patent prosecution history estoppel applies to bar ShieldMark from alleging the Accused Products contain the equivalent of ShieldMark's "double-sided adhesive layer" from Claim 2. The prosecution history of the '480 Patent demonstrates no representations by the applicants sufficient to surrender equivalents to the "double-sided adhesive layer" language and no inference of surrender can be reasonably drawn. The prosecution history record clearly demonstrates that the "double-sided adhesive layer" language was not added to avoid prior art or for reasons related to patentability. In fact, the Patent Examiner never suggested a patentability concern with the "double-sided adhesive layer" language.

The Accused Products undeniably contain the equivalent of Claim 2, and InSite has similarly failed to even attempt an analysis of the equivalents under the "function-way-result" test.  Both the '480 Patent and the Accused Products are adhesive tapes for floor marking applications, and the "function-way-result" that these products use to secure the tape to the floor is substantially the same.  (Lowe Declaration Doc# 59-1, pg. 2, ¶ 11).

For these reasons, which are more fully detailed below, InSite has failed to meet its burden of demonstrating there are no genuine issues of any material fact and that it is entitled to summary judgment as a matter of law.  Thus, InSite's Motion should be denied.

## III.    LAW & ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).   The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

3

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## B. <u>The Law of Patent Infringement</u>

A patent is infringed when a person "without authority makes, uses, offers to sell or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). The Court should employ a two-step process in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the Court must construe the asserted claims to ascertain their meaning and scope. *Id.* Construction of claims is a question of law. *Cyber Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). The trier of fact must then compare the properly construed claims with the accused infringing product. *Markman*, 52 F.3d at 976. This second step is a question of fact. *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed Cir. 1998).

Literal infringement occurs where each element of at least one claim of the patent is found literally in the alleged infringer's product. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987). Where a product does not literally infringe a patent claim, it may still infringe under the doctrine of equivalents if the differences between an individual

element of the claimed invention and an element of the accused product are insubstantial. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

Infringement under the doctrine of equivalents is an intensely factual inquiry. *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000). For a finding of infringement under the doctrine of equivalents, the claim element not literally present must be compared to the element of the infringing product. *Warner-Jenkinson Co.*, 520 U.S. at 40, 41. The determination of infringement can be based on the application of the tripartite "function-way-result" test. *Id*. Under the "function-way-result" test, an element in an accused product is equivalent to the claimed element if the accused element performs substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

C. **The Accused Products Infringe the '480 Patent, Either Literally or Under the Doctrine of Equivalents.**

1. **The Accused Products Manufactured and Sold by InSite Literally Infringe Claim 5 of the '480 Patent.**

Expert testing comparing features of the Accused Products with the '480 Patent has already confirmed that InSite's "Superior Mark" product literally infringes Claim 5 of the '480 Patent.  Specifically, both the '480 Patent and the Accused Products include a polymer layer having a Shore A Hardness of between 92 to 100. (Saqqa Declaration at ¶ 12).  Both the '480 Patent and the Accused Products include a layer of adhesive attached to polymer layer. (*See*, generally, the '480 Patent, Doc# 4-1; *see also* Lowe Declaration, Doc# 59-1, pg. 2, ¶¶ 6-7).  Both the '480 Patent and the Accused Products include peel adhesive strength which meets the limitations as construed by the Court's Claim Construction Ruling.[1]

---

[1] In its February 14, 2013 Memorandum Opinion and Order, this Court construed "peel adhesion greater than 2.0 Lb/in width" to mean "a measure of strength of an adhesive bond between the adhesive tape and a test surface

5

Nevertheless, InSite attempts to argue that the Accused Products do not infringe because its polymer layer does not include a "largely, but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions, or steps" based on the existence of the minor edge feature (broken circle #2) identified below:



FIG. 1

Although InSite admits that the vast majority of the Accused Product meets the claimed thickness as its polymer layer is 0.027" thick, InSite's position is that the minor edge feature saves it from literally infringing Claim 5. This is incorrect for two reasons.

First, the Accused Products overall meet the claim. As construed, the claimed thickness element requires a "largely, but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions, or steps." The only dispute raised by InSite is that its Accused Products lack a "significant deviation, protrusion, or step." (Defendant's Motion for Summary Judgment of Non-Infringement, Doc# 59, pgs. 6-7). As can be seen from Figure 1 above, attached by InSite to the Declaration of Mr. Lowe in support of its Motion for Summary Judgment (Defendant's Motion for Summary Judgment of

_____

greater than 2 lbs for each inch width." This Court construed "peeled at a 90 degree angle" to mean "when the angle between the test surface and the direction of the force which is pulling the tape from the test surface is 90 degrees." This Court construed "dwell time of 1 hour" to mean "waiting one hour from sample preparation to conduct the test method. Therefore, this element may be described as "measure of strength of an adhesive bond between the adhesive tape and a test surface greater than 2 lbs for each inch width, when the angle between the test surface and the direction of the force which is pulling the tape from the test surface is 90 degrees, waiting one hour from sample preparation to conduct the test method."

Non-Infringement, Doc# 59-1, pgs. 1-13), 95% of the Accused Products – that is, everything except the narrow edge features - include a polymer layer with a thickness literally in the claimed range (i.e. the accused thickness of 0.027" is within the claim range of 0.020" and 0.065").

But even the remaining 5% - the narrow edge features – also read on the claim language as construed. The court's claim construction excluding "significant deviations, protrusions or steps" is to account for arguments Plaintiff made during prosecution of the patent application. Specifically, the Patent Examiner rejected an earlier version of the claimed polymer layer by looking to a figure in the Maurer reference (Doc# 42-3, pg. 65) describing an applique with a set of three 20 mil (or 0.020") increments. (Plaintiff's Opening Claim Construction Brief, Doc# 42-3, pg. 77). In the relevant passage, Maurer describes the thin step as 0.008", the middle step as 0.028" and the last step as 0.048". Maurer, Col 12, ln. 66 bridging to Col. 13, ln. 2. In other words, the "significant steps" of Maurer and as construed into the claim include multiple steps (108, 110 and 112) each increasing the thickness by 0.020". This means that the middle step is a 250% increase from the first, and the last step is a 500% increase from the first.



FIG. 14

InSite argues that its edge feature includes a single 0.005" "recess and step", that it calculates as at 18.5% of the 0.027" thickness of the polymer layer. InSite cannot and does not conclude that the recess and step include multiple "steps" as taught by Maurer and as the basis for the Court's construction. Moreover, InSite does not and cannot conclude its "recess and step" increases the thickness of its polymer layer at all. Even InSite's own expert analysis of the Accused Products was unable to measure the thickness of the

"step" varying throughout the taper on the opposite side of the edge feature.  Instead, InSite's own report concluded that the thickness of the Accused Product is 0.0298 inches, which is within the claimed range of 0.020" and 0.065".  (Serra Declaration, ¶ 22, Doc# 36-1, pg. 3).  This forces InSite to <u>admit</u> that the Accused Product contains a "thickness of 0.027 inches" which is well within the stated range of Claim 5.  (Defendant's Motion for Summary Judgment of Non-Infringement, Doc# 59, pg. 6).  Furthermore, InSite admits that more than 95% of the Accused Products are within the 0.020" and 0.065" thickness range of Claim 5.  *See* Defendant's Motion for Summary Judgment of Non-Infringement, pg. 3.

Thus, the Accused Products overall meet the claimed thickness limitation as construed. Even if the edge features that combine for an insignificant less than 5% of the Accused Product are excluded, the remaining 95% of the Accused Product meets the limitations of Claim 5.

The second reason the Accused Products literally infringe Claim 5 as construed relates to the open ended nature of Claim 5.  Specifically, the open ended claim transition phrase "comprising" allows a finding of infringement when an accused product includes elements beyond those called for in a claim.  "The transitional term 'comprising,' ... is synonymous with 'including,' 'containing,' or 'characterized by,' [and] is open-ended and does not exclude additional, unrecited elements or method steps." MPEP, 8th ed., rev. 1 § 2111.03 (2003); *see Baran v. Medical Device Technologies, Inc.*, 519 F.Supp.2d 698, 714 (2007) ("Comprising" is a term of art used in patent claim language, which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."); *see also Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948) ("comprising" leaves "the claim open for the inclusion of unspecified ingredients even in *major* amounts"(emphasis added)).  Even if the edge features in the Accused Products are excluded, the rest of the Accused Product is not

disputed as literally reading on ALL claim elements including the 0.020" to 0.065" range specified in Claim 5. The presence of an additional edge feature does not save a finding of infringement because the open ended claim language "comprising" permits such an additional feature.

For these reasons, InSite's Motion for Summary Judgment should be denied as to literal infringement of Claim 5. There is no set of facts that demonstrate that the Accused Product does not literally infringe on Claim 5 of the '480 Patent. Indeed, the facts show that the Accused Products infringe Claim 5 and the Court may enter summary judgment in ShieldMark's favor finding infringement and narrowing the issues for trial. *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114 (Fed. Cir. 1999) ("[I]f a motion for summary judgment has been made, a district court may grant summary judgment to any party—including a non-movant.").

### 2. Patent Prosecution History Estoppel Does Not Bar the Application of the Doctrine of Equivalents to the Asserted Claim 2.

Prosecution history estoppel limits the doctrine of equivalents by preventing a patentee from regaining through equivalents what was surrendered during prosecution in order to obtain the patent. In *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd*, 535 U.S. 722, 735 (2002), the United States Supreme Court acknowledged that "prosecution history estoppel does not arise in every instance when a patent application is amended," and reversed the Federal Circuit's application of a complete bar against any equivalent to a claim narrowed by amendment. The Court noted that a complete bar would be "inconsistent with the purpose of applying estoppel in the first place - to hold the inventor to the representations made during the application process and to the inferences that may reasonably be drawn from the amendment." *Id.* at 737-8.

In *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 586 (Fed. Cir. 2000), the Federal Circuit set forth a three-stage inquiry to be pursued in the determination of whether a claim of infringement under the doctrine of equivalents is barred by prosecution history estoppel.  The first stage asks whether there was an amendment that narrowed the literal scope of the original claim. *Id*.  If there was a narrowing amendment, the second stage asks whether that amendment was made for a reason substantially related to patentability. *Id.* at 566. If the court finds the reason for the amendment was substantially related to patentability, the third stage attempts to determine the scope of subject matter surrendered by the narrowing amendment. *Id.* at 573.

In its Motion, InSite argues that ShieldMark is not entitled to any equivalents in the infringement analysis because the two claim elements in issue, "double-sided adhesive layer" and "substantially uniform thickness", were added to the claims by way of amendment and were argued in support of patentability during the prosecution of the patent-in-suit. InSite's attempt to use prosecution history estoppel to bar application of the doctrine of equivalents with respect to the "double-sided adhesive layer" language is entirely unwarranted. The prosecution history record manifests no representations by the applicants to surrender equivalents to the "double-sided adhesive layer" language and no inference of surrender can reasonably be drawn.

### a.  The Asserted Claim Was Not Narrowed By Amendment

The burden of establishing the presence of a narrowing amendment is on the alleged infringer. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-7 (Fed. Cir. 2003). If the court does not find a narrowing of the relevant claim limitation, amendment-based prosecution history estoppel does not apply to the asserted claim. *Id.* at 1366.  InSite argues that simply because the "double-sided adhesive layer" language was added in an

10

amendment to the '480 Patent, the doctrine of patent prosecution history estoppel automatically bars the availability of the doctrine of equivalents. InSite has cited no authority for this proposition. Nothing in the *Festo* line of decisions supports such a proposition.

In *Funai Electric Co. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1368 (Fed. Cir. 2010), the litigation centered on a device designed to limit noise while a VCR plays a tape. The patentee, Funai's original application called for a VCR's motor to be "electrically insulated" from its tape deck. *Id.* The Patent and Trademark Office (PTO) determined the phrase "electrically insulated" was too broad in light of prior art, so Funai narrowed its claims to require specific structural components of a VCR to be made of an insulating material. *Id.* at 1365, 1369. A competitor then manufactured a VCR using a different type of material to insulate the same structural components. *Id.* at 1367. Because the competitor used a different type of insulating material, the court determined that its VCR did not literally infringe the Funai patent. See *Id.* at 1367 (explaining Funai used a polycarbonate resin as an insulating material while Daewoo employed a "filled" polycarbonate resin containing 8% carbon fibers). However, the court allowed Funai to assert infringement under the doctrine of equivalents in spite of the narrowing amendment. *Id.* at 1368-70.

In the court's eyes, the type of insulating material used was tangential to the issue of whether or not the competitor's VCR actually contained insulating materials. *Funai Electric Co. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1369 (Fed. Cir. 2010) . The *Funai* court made several observations in reaching this conclusion. First, *Funai* narrowed its claims during prosecution after an initial rejection solely to avoid prior art. *Id.* Second, the entire purpose behind the narrowing amendment was to clarify what specific VCR structural components needed to be insulated, making the presence of insulating materials on those components a

relevant limitation. *See Id.* (describing how the patentee, Funai narrowed its claims specifically to avoid the Watanabe and Zenzefilis patents, which did not contain the structural components limitation).  Clarifying the type of insulation material used was not the reason for the narrowing amendment, so this limitation was merely tangential.  *Id.* (noting the type of insulating material was not an issue during prosecution). Therefore, Funai could use the doctrine of equivalents with regard to the type of insulating material used.

To determine whether prosecution history estoppels is a bar to ShieldMark's reliance of the doctrine of equivalents here, the key issue involves the "double-sided adhesive layer" language found in Claim 2 of the '480 Patent.  In its Claim Construction ruling this Court has construed this element to mean "a layer of non-adhesive material with adhesive on both sides." (Memorandum and Order, Doc# 54, pg. 14).  The "double-sided adhesive layer" language was first introduced in Amendment A and Response to Office Action filed with the United States Patent and Trademark Office July 21, 2005.  (Plaintiff's Opening Claim Construction Brief, Doc# 42-3, pg. 39).  The element was included in a brand new claim 12 – and was not an amendment to any existing claim.  On page 16, the reason for the inclusion of the new claim 12 was identified as follows:

> [New claim 12 is] believed patentable in light of the references of record. Applicant believes that these new claims will not require an additional search because, **even though they have been broadened in certain respect**s, these new claims recite elements largely contained in the present claims covered by the Examiner's pervious search. (emphasis added)

It is clear the intention of introducing the "double-sided adhesive layer" language was to broaden the scope of the patent, and clarify the scope of the claim. Therefore, although this limitation was the result of an amendment it should not be considered to be a "narrowing" amendment for purposes of prosecution history estoppel.

**b. Even If The Court Determines There Was A Narrowing Amendment, The Reason For The Amendment Was Not Substantially Related To Patentability.**

If the Court determines that ShieldMark made a narrowing amendment, the Court must then determine whether the amendment was made for a reason related to patentability. *Festo*, 344 F.3d 1359 at 1366-7. In making such a determination, the court is restricted to the prosecution history record, see *Id.*; however, the court "can properly consider any attorney argument regarding the reason for the amendment that is supported by the prosecution history record." *Festo*, 234 F.3d at 586, n.6. Where no reason for the amendment can be determined, a rebuttable presumption arises that the amendment was made for a reason related to patentability (the "*Warner-Jenkinson presumption*") *Id.* However, even in the case of an unexplained amendment, there is no bar in cases "where the amendment cannot reasonably be viewed as surrendering a particular equivalent." *Festo*, 535 U.S. at 740. According to the Federal Circuit, "if a patent holder can show from the prosecution history that a claim amendment was not motivated by patentability concerns, the amendment will not give rise to prosecution history estoppel." *Festo* 234 F.3d at 567-8.

The prosecution history here shows that the inclusion of the "double-sided adhesive layer" language was not motivated by patentability concerns. First, the prosecution history record clearly demonstrates that the "double-sided adhesive layer" language was NEVER amended. Rather, the language appeared in connection with an entirely new claim. Moreover, the language was not added to avoid prior art. It is clear from Amendment A and Response to Office Action cited above that the intention of the new language was to <u>broaden</u> the scope of the patent and clarify the Claim. (Plaintiff's Opening Claim Construction Brief, Doc# 42-3, pg.50). The amendment was not made for reasons related to patentability. Finally, relevant portions of the

13

Examiner's Reasons for Allowance (Plaintiff's Opening Claim Construction Brief, Doc# 42-3, pg. 513) makes it clear that the '480 Patent issued because the claims require:

> … a polymer layer having a Shore A Hardness of 92 to 100 and an uniform thickness of about 0.020" to 0.065", <u>an adhesive layer</u> attached to the polymer layer, wherein the adhesive has a peel adhesion greater than 2.0 lb/in width when peeled at 90 degree angle. (emphasis added)

In other words, the Patent Examiner was not focused on the "double-sided" nature of the adhesive layer, rather, the Patent Examiner identified an "adhesive layer" having certain claimed adhesion properties in the Reasons for Allowance.  Therefore there is simply no reason to believe that the "double-sided adhesive layer" language was added for any reason related to patentability.

In sum, the prosecution history makes clear that the "double-sided adhesive layer" language was not added for a purpose substantially related to patentability. There was no requirement by the Patent Office to disavow "an adhesive layer attached to the polymer layer" that was not a "double-sided adhesive layer". Therefore, ShieldMark is not attempting to recapture subject matter surrendered during prosecution.

### 3. The Accused Products Manufactured and Sold by InSite Infringe the '480 Patent under the Doctrine of Equivalents.

The Court construed the claim term "double-sided adhesive layer" to mean "a layer of non-adhesive material with adhesive on both sides."  (Memorandum and Order, Doc# 54, pg. 14).  In its Motion, InSite argues that the Accused Products do not infringe because they do not contain "a layer of non-adhesive material with adhesive on both sides," but rather a single layer of adhesive with no non-adhesive constituent part.  (Defendant's Motion for Summary Judgment of Non-Infringement, Doc# 59, pg. 5, citing Lowe Declaration ¶¶ 4-6).  InSite has failed to meet its burden or even attempt an analysis of the equivalents under the "function-way-result" test

14

based on its unwarranted and erroneous assumption that the doctrine of equivalents is barred by prosecution history estoppel. As set forth above, prosecution history estoppel does not apply and InSite is not entitled to summary judgment with respect to the "double-sided adhesive layer" claim term.

The most often used test for determining whether an accused element is equivalent to a claimed element is the so-called tripartite function-way-result test. *Warner-Jenkinson Co.*, 520 U.S. at 40-41. Under this test, an accused product element is equivalent to a claimed element if the accused element performs substantially the same function in substantially the same way to accomplish the same result as the claimed element. *Graver Tank & Mfg.*, 339 U.S. at 608.

### a. **Function performed**

The first step in the analysis is whether the structure in the accused device performs substantially the same function as the equivalent structure in the '480 Patent. This is easily shown here. The structure at issue is the method by which the tape adheres to a flooring environment. The function performed by this structure is the fastening or securing of the tape to the floor. *See, generally*, Lowe Declaration, Doc# 59-1, pg. 3, ¶11 (that "the adhesive [is] for securing the accused products to a floor …"). Because the purpose of this structure is to secure the tape to the floor, the "layer of adhesive with no non-adhesive constituent", such as contained in the Accused Products, serves an equivalent function to a "layer of non-adhesive material with adhesive on both sides".

### b. **Means by which function is performed.**

The means by which this function is performed is substantially equivalent to the '480 Patent. Both the '480 Patent and the Accused Products employ an "adhesive layer attached to the polymer layer" to secure the tape to the floor. The adhesive layer of the '480 Patent simply

includes a non-adhesive layer between the adhesives. As recognized by the Patent Examiner, any adhesive having two sides, each side having adhesive properties, may perform as a "double-sided adhesive layer".  (Plaintiff's Opening Claim Construction Brief, Doc# 42-3, pg. 55).  A reasonable jury could find the Accused Product's method of securing the tape to the floor with a "layer of adhesive with no non-adhesive constituent" substantially equivalent to the '480 Patent's method of securing the tape to the floor with "a layer of non-adhesive material with adhesive on both sides."

> ### c.  <u>Result achieved.</u>

The result achieved by InSite's method of securing the tape to the floor is substantially the same as the "layer of non-adhesive material with adhesive on both sides" used by ShieldMark. Indeed, both the methods of the '480 Patent and the Accused Products each result in a measure of strength of an adhesive bond between the adhesive tape and a test surface greater than 2 lbs for each inch width, when the angle between the test surface and the direction of the force which is pulling the tape from the test surface is 90 degrees, waiting one hour from sample preparation to conduct the test method. (Memorandum and Order, Doc# 54, pgs. 5-6; Saqqa Declaration at ¶ 13).

### D.  <u>ShieldMark May Enforce Its Provisional Rights</u>

In addition to other rights provided by the patent laws set forth in Title 35 of the U.S. Code, a patent also includes the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the patent application and ending on the date the patent is issued, makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application. 35 U.S.C. § 154(d). This "provisional right" was

added through the "American Inventor Protection Act of 1999," which also required the publication of most patent applications eighteen months after their earliest priority dates.

Enforcement of this right requires that the infringer have actual notice of the published patent application, and that the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application. 35 U.S.C. § 154(d).  ShieldMark provided InSite actual notice of the published patent application on July 5, 2005. (Amended Complaint for Patent Infringement, Doc# 4, pg. 2, ¶ 7).  InSite does not dispute that it was provided actual notice of the published patent application. Rather, InSite argues that the published patent application and the '480 Patent are not "substantially identical".  The "substantially identical" requirement was intended to provide guidance to the public as to the specific behavior to avoid between publication and grant.

 "Substantial identity" is to be judged in accordance with the standards applied to the "substantially identical" element of the reissue statute, 35 U.S.C. § 252, and specifically in accordance with *Slimfold Mfg. Co. v. Kindead Indus., Inc.*, 810 F.2d 1113 (Fed. Cir. 1987). InSite and ShieldMark appear to be in agreement that the standards relating to the "substantially identical" requirement of 35 U.S.C. § 252 set forth in *Slimfold* should also be applied to the "substantially identical" requirement of 35 U.S.C. § 154(d). (Defendant's Motion for Summary Judgment, Doc# 59, pg. 9).

Under 35 U.S.C. § 252, "substantially identical" refers to the scope of the claims and does not require identical words to be used. *Slimfold*, 810 F.2d at 1115-1116 ("it is the scope of the claim that must be identical, not that the identical words must be used"); *Mineo, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1115 (Fed. Cir. 1996). In *Slimfold*, an amendment to overcome a rejection under 35 U.S.C. § 112 was determined not to be a substantive change, and

17

the Federal Circuit explicitly stated that a "patentee should be allowed to correct an error or ambiguity without having to rely on implication or litigation." *Slimfold*, 810 F.2d at 1116. Furthermore, the addition of words to a claim that merely make the claim more definite is not a substantive amendment. *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989).  As set forth above in detail, the amended claims must be compared to the published claims under 35 U.S.C. § 154(d), and amendments may not be viewed in a vacuum. Courts have decided that an amendment that merely clarifies the terms of a claim is not a substantial change, but an amendment that narrows the scope of a claim is a substantial change.  *Prestige Pet Products, Inc. v. Pingyang Huaxing Leather & Plastic Co. Ltd.*, 767 F.Supp.2d 806, 812 (E.D. Mich. 2011); *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed.Cir.1997).  To determine whether a claim change is substantive, it is necessary to analyze the claims of the original and the issued patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information.  *Bloom Eng'g Co.*, 129 F.3d at 1250.  The claims must be analyzed in light of the intrinsic evidence in the record, including the patent claims, the prosecution history, and prior art.  *Prestige*, 767 F.Supp.2d at 812; *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996).  "[I]ntrinsic evidence is the most significant source of legally operative meaning of disputed claim language."  *Id*. at 1582.

"Identical" does not mean verbatim, but means at most without substantive change. *Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827-28, 221 USPQ 568, 575 (Fed.Cir.1984).  In *Slimfold*, 810 F.2d at 1115, the court explained that the scope of the claims must be the same, not that the same words must be used. Thus whether amendments made to overcome rejections based on prior art are substantive depends on the nature and scope of the

18

amendments, with due consideration "to the facts in any given case that justice will be done." *Laitram*, 163 F.3d at 1347.  An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical.  *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977, 1 USPQ2d 1202, 1207-08 (Fed.Cir.1986); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306-07 (Fed.Cir.1989).

Though ShieldMark amended certain claims, some more than once, the number of times that changes have been made is not dispositive as to whether there was a change of scope or any other material terms of the invention.  Indeed, five of the thirteen issued claims all depending from original independent claim 1 (issued Claim 5) issued in their originally filed form.  As to original independent claim 1, amendments there merely incorporated a previous dependent claim thickness limitation and further described the desired peel adhesion to be obtained from the layer of adhesive.

On pages 8 and 9 of InSite's Motion for Summary Judgment (Doc# 59), InSite argues that there were amendments to individual claims of the '480 Patent, but InSite <u>fails to provide any analysis or cite to any facts</u> that would support an argument that any claim of the '480 Patent underwent a <u>substantive</u> change. The entire exercise is irrelevant, however, without the context of the amendments, which InSite does not address.  For these reasons, InSite is not entitled to summary judgment in this regard.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant InSite Solutions, LLC's Motion for Summary Judgment of Non-Infringement.

Respectfully submitted,


/s/Martin J. Pangrace
W. Scott Harders (#0070598)
Martin J. Pangrace (#0073857)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Telephone: (330) 253-5060
Facsimile:  (330) 253-1977
E-Mail:  wsharders@bmdllc.com
            mjpangrace@bmdllc.com


/s/ Susan L. Gragel
Susan L. Gragel (#0002785)
**GOLDSTEIN GRAGEL LLC**
526 Superior Avenue, East, Suite 1040
Cleveland, OH  44114
Telephone: (216) 771-6633
Facsimile:  (216) 771-7559
E-Mail:  sgragel@ggcounsel.com


/s/ Mark B. Cohn
Mark B. Cohn (#0027878)
**DUBYAK CONNICK THOMPSON &
BLOOM, LLC**
3401 Enterprise Pkwy., Suite 205
Cleveland, OH  44122
Telephone: (216) 364-0500
Facsimile:  (216) 364-0505
E-Mail:  mark@markcohnlaw.com

*Attorneys for Plaintiff, ShieldMark, Inc.*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of May 2013, a copy of the foregoing *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/Martin J. Pangrace*
Attorney for Plaintiff

## **LOCAL RULE 7.1(f) CERTIFICATION**

I hereby certify that the foregoing above-captioned case pending in the United States District Court, Northern District of Ohio, Eastern Division, was assigned to the standard track, and that the foregoing *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement* complies with all requirements of Local Rule 7.1(f).

*/s/Martin J. Pangrace*
Attorney for Plaintiff