IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SHIELDMARK, INC. | ) | |
| | ) | |
| PLAINTIFF | ) | CASE NO.: 1:12-CV-00223-DCN |
| | ) | |
| V. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| INSITE SOLUTIONS, LLC | ) | |
| | ) | |
| DEFENDANT | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Now comes Defendant, InSite Solutions, LLC ("InSite"), in reply to the opposition of Plaintiff, ShieldMark, Inc. ("ShieldMark"), to Defendant's Motion for Summary Judgment of Non-Infringement. InSite's Motion should be granted for the reasons set forth in its opening brief (Doc. 59) and for the reasons further set forth herein.

INTRODUCTION AND LEGAL PREMISES

The opening and opposition briefs show that this case is ripe for summary disposition on issues of law. Playing large in the analysis before the Court are the "all elements rule" and "prosecution history estoppel," the application of each of those doctrines being an issue of law. *Seachange Int'l., Inc. v. C-COR Inc.,* 413 F.3d 1361, 1378 (Fed. Cir. 2005), citing *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); see also *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 344 F.3d 1359, 1367-68 (Fed. Cir. 2003).

1

Also compelling in this matter is the vitiation doctrine as a bar to the doctrine of equivalents, also an issue of law. *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1365 (Fed. Cir. 2005); *Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.*, 507 F. Supp. 2d 214, 222 (E.D.N.Y. 2007).

The defense of non-infringement is appropriately decided on summary judgment when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device, either literally or under the doctrine of equivalents. *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd,* 505 F.3d 1371, 1374 (Fed. Cir. 2007). Resolving issues of infringement is a two-step process—first the court must construe the asserted claims to ascertain their meaning and scope and then compare those properly construed claims with the accused product. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995). The first step was already completed by this Court through its Memorandum Opinion and Order on claim construction (Doc. 54). All that remains is the application of the construed claims to the accused product. The nature and structure of the accused product is fixed and has not been the subject of challenge.

Infringement follows the "all elements rule," which simply states that each and every element of a claim, or its equivalent, must be present in an accused product for infringement to be found. *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1331 (Fed. Cir. 2001); *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.,* 525 F.3d 1159, 1168 (Fed. Cir. 2008). In its opening brief (Doc. 59), InSite advanced that the "all elements rule" could not be satisfied for any of the asserted claims, because at least one element of each of the asserted independent claims (claims 2 and 5) was absent in the accused products. Specifically, the requirements of "a double-sided adhesive layer" in claim 2 of the '480 patent and the limitation of a polymer layer having a

2

"substantially uniform thickness" in claim 5 were not satisfied by the accused product.  InSite advanced its arguments both with regard to literal infringement and infringement under the doctrine of equivalents.

Notably, in its Opposition (Doc. 72), ShieldMark only addresses the issue of literal infringement with regard to claim 5 and infringement under the doctrine of equivalents as to claim 2.  There has been no challenge lodged as to InSite's demonstration that there can be no infringement of claim 5 under the doctrine of equivalents, nor can there be literal infringement of claim 2.  Accordingly, judgment should be entered forthwith on these two issues as being unchallenged.

Below, InSite addresses the opposition of ShieldMark, incorporating herein by reference the positions it advanced in its opening brief (Doc. 59).

**I.    Given The Court's Claim Construction,
        The Accused Product Cannot Be Found To Literally Infringe Claim 5**

    **A.    The Accused Product Does Have Significant Deviations Or Steps And,
            Therefore, Cannot Literally Infringe Claim 5**

The Court interpreted the claim term "substantially uniform thickness" to mean "a largely but not necessarily wholly, uniform distance between the upper surface and the lower surface **without significant deviations, protrusions or steps."**  (emphasis added)  (Doc. 54, p. 14). Therefore, to satisfy the properly construed claim limitation, the accused product must (1) have a largely but not necessarily wholly, uniform distance between the upper surface and lower surface and (2) not have significant deviations, protrusions or steps.  Accordingly, even if the accused product has a uniform distance between the upper surface and lower surface, if it has "significant deviations, protrusions or steps," the limitation is not satisfied and there can be no literal

3

infringement.

In its brief, ShieldMark never denies that the accused product does have a "step," nor can it. Indeed, the inventor of the patent-in-issue, Thomas Goecke, testified in deposition that the accused product has "steps." (See attached Exhibit A, Thomas Goecke Deposition Transcript, pp. 168-169). Moreover, Goecke testified to the "significance" of the step feature, namely to "be a channel to where adhesive is applied". (Exhibit A, p. 169, ll. 12-15).

Thomas Goecke additionally testified as to "deviations," in that the thickness of the accused product changes in the ramped area (Exhibit A, p. 171) and that the purpose of the ramped area is to help skids slide across the tape rather than catch it (Goecke Dep. Tr., pp. 171-172). Accordingly, ShieldMark's opposition argument that the "ramped area" of the accused product is a "minor edge feature" (i.e., insignificant) because it is merely five percent of the total surface (Doc. 72, p. 12 of 26) necessarily fails.

In sum, "significant" means "of consequence." See Exhibit B, www.dictionary.com. Regardless of their size (which was properly not addressed in the Court's claim construction), the two steps along opposing side edges of the accused products are "of consequence" in that they define "a channel to where adhesive is applied," and the ramped areas along the opposite edges are "of consequence" in that they help skids slide across the tape rather than catch it. It can certainly not be said of the accused products that the polymer layer is "without significant deviations, protrusions or steps" as Claim 5 requires.

Unlike the court's claim construction in the *Baran v. Medical Device Technologies, Inc.*, 519 F. Supp. 2d 698, 714 (2007), relied upon by ShieldMark to support its argument, the Court's claim construction here (i.e., "without") precludes a finding that the accused product may have "significant deviations" or "steps" and yet literally infringe. Indeed, the facts in this case are

4

akin to those in *Kustom Signals, Inc., v. Applied Concepts, Inc*., 264 F.3d. 1326, 1332 (Fed. Cir. 2001)**.**  In *Kustom Signals*, the Federal Circuit found that the accused traffic radar device did not merely practice an additional function or perform an additional step as argued by the plaintiff, but rather it performed a function explicitly moved outside the scope of the claims.  In so holding, the Federal Circuit stated that "The open-ended transition 'comprising' does not free [a] claim from its own limitations."  Here, ShieldMark seeks to free Claim 5 of its own limitations of a polymer layer "without significant deviations, protrusions or steps."

> **B.** **ShieldMark's Contentions Regarding The Open-Ended Nature Of Claim 5 Are Misplaced**

The argument of ShieldMark regarding "comprising" rendering Claim 5 "open-ended" and capable of being infringed notwithstanding the presence of steps and ramped edges in the accused product is totally misplaced in the first instance, and nothing more than an attempt to have this Court reopen its claim construction in the second.  Rather, this Court should now apply its claim construction to the accused product—the proper infringement analysis.  *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,* 694 F.3d 1312, 1319 (Fed. Cir. 2012).

While it is true that the word "comprising" in Claim 5 means that an accused product may be found to infringe when it "includes elements beyond those called for in a claim" (Doc 72, p. 13 of 26), that is not the case here.  The steps and ramped edges of InSite's products are not "elements beyond those called for in a claim," but are elements *specifically excluded* by the claim.  Their presence in InSite's products, when Claim 5 requires their exclusion, *precludes* a finding of infringement.  ShieldMark's attempt to restructure InSite's product such that the steps and ramped edges are separate from and in addition to the polymer layer should not be countenanced.  The steps, ramped edges, and interposed recess are all part and parcel of a single, integral polymer layer.

### C. The Maurer Reference Is Irrelevant To The Issue of Literal Infringement of Claim 5

ShieldMark argues extensively as to the effect Maurer should have on the Court's infringement analysis of Claim 5 in the context of the presence/absence of the limitation "substantially uniform thickness" in the accused product. (Doc. 72, pp. 12-13 of 26). In doing so, ShieldMark is again seeking to reopen claim construction. Its desire is understandable because the Court interpreted the term "substantially uniform thickness" to mean "a largely but not necessarily wholly, uniform distance between the upper surface and the lower surface **without significant deviations, protrusions or steps."** (emphasis added) And, contrary to ShieldMark's protestations, the Court did not specify the need for more than one step in an accused product before non-infringement can be found, or that "significant," if it applies at all to the limitation "steps," means of a particular magnitude or size such as in Maurer. The Court did not include Maurer in its claim construction. Nor does the Court's construction of this term require that a step or deviation in the thickness be an increase in thickness as found in Maurer. These are purely "claim construction" arguments. They are late in the first instance, wrong in the second, and they play no role in the infringement analysis.

ShieldMark's resort to Maurer is overcast by its efforts to minimize the design of the accused products in an attempt to show infringement of Claim 5. It starts with "First, the Accused Products *overall* meet the claim" (Doc. 72, p. 11 of 26), follows with "everything *except* the narrow edge features include a polymer layer with a thickness literally in the claimed range" (Doc. 72, p. 12 of 26), and concludes with "the Accused Products *overall* meet the claimed thickness limitation as construed (Doc. 72, p. 13 of 26). (each emphasis added) However, infringement is not shown by such generalities; it is rather shown by the specifics of the accused product. As pointed out succinctly in InSite's Brief in Support of its Motion for

6

Non-Infringement (Doc. 59), the accused product has at least two steps, and a recess between the two steps, the purpose of which is to hold adhesive. The purpose is "significant" or "of consequence." The accused product is ramped along opposite edges to help skids slide across the tape and not catch it. The purpose is "significant" or "of consequence." Because the accused product is not without steps and is ramped, it does not meet the limitation "substantially uniform thickness" as properly construed by this Court.

Also as pointed out in InSite's Brief in Support of its Motion for Summary Judgment of Non-Infringement (Doc. 59, p. 5), Maurer's only role in the Court's infringement analysis is with respect to the application of the doctrine of equivalents and prosecution history estoppel. As presented in InSite's opening brief, because of its argument to the Examiner, ShieldMark is barred from arguing that an accused product having steps infringes Claim 5 of the '480 Patent. Notably, ShieldMark has not challenged InSite's contentions in that regard.

**II.     The Accused Products Cannot Be Found To Infringe Claim 2 Under the Doctrine of Equivalents**

    **A.     The Doctrine Of Equivalents Cannot Be Used To Eviscerate The Claim Element "Double-Sided Adhesive Layer"**

It is fundamental that the doctrine of equivalents cannot be used to eviscerate a claim element. See, *Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1312 (Fed. Cir. 2004) ("Here the formation of a particulate dispersion inside the body cannot infringe under the doctrine of equivalents because this would vitiate the claimed requirement that the dispersion be prepared outside the body."); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("[I]t would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise."); *Conopco, Inc. v. May Dept. Stores*

7

*Co.,* 46 F.3d 1556, 1562 (Fed. Cir. 1994) ("A conclusion that the 162.9:1 formulation infringes [a claim requiring a ratio of 'about 40:1'] under the doctrine of equivalents would eviscerate the plain meaning of that limitation."); and *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.,* 16 F.3d 394, 398 (Fed. Cir. 1994) ("The doctrine of equivalents is not a license to ignore claim limitations.")

Here, ShieldMark advances the doctrine of equivalents in such a way that it would vitiate the claim requirement of "a layer of non-adhesive material" that this Court found as an essential requirement in its claim construction of the term "double-sided adhesive layer." (Doc. 54, pp. 6-7). The accused product does not have the required "layer of non-adhesive material," and no reasonable juror could find infringement under the doctrine of equivalents because such a finding would eviscerate the express requirement that "a layer of non-adhesive material" be present.

In light of the foregoing, and particularly the application of the vitiation doctrine, no further discussion of the application of the doctrine of equivalents (i.e., the function-way-result test) need be had. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1017 (Fed. Cir. 2006), *citing Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39 n.8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) ("[U]nder the particular facts of a case, ... if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve." (emphasis in original)) For this reason alone, the Court should enter a judgment of non-infringement of Claim 2.

> **B.     Contrary To ShieldMark's Assertions, Claim 2 Was Narrowed By Amendment, Also Negating Any Application Of The Doctrine Of Equivalents**

ShieldMark argues that "the prosecution history record manifests no representations by the applicants to surrender equivalents to the 'double-sided adhesive layer' language and no inference of surrender can reasonably be drawn. While this argument need not even be broached

given that the doctrine of equivalents cannot apply for the reasons stated above, it, too, is fatally flawed. ShieldMark supports its position stating that patent Claim 2 was first introduced in response to an office action as brand new claim 12 rather than as an amendment to an existing claim. (Doc. 72, p. 17 of 26). In so arguing, ShieldMark ignores the law of the Federal Circuit that the introduction of a new claim combining and restating elements present in earlier claims can function as an amendment warranting application of prosecution history estoppel. *Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.,* 262 F.3d 1333, 1338 (Fed. Cir 2001). In introducing new claim 12, ShieldMark admits that applicant declared "these new claims recite elements largely contained in the present claims covered by the Examiner's previous search." (Doc. 72, p. 17 of 26).

Further, while the applicant stated that his new claims "have been broadened in certain respects," it is clear that new claim 12 was significantly narrower. This is apparent from a comparison of application claim 1, the broadest original claim, with claim 12, such comparison being facilitated by Doc. 59-1, p. 7 of 13, and Doc. 42-3, p. 39. Everything in claim 12 that differs from application claim 1, including "double-sided adhesive layer," renders claim 12 narrower than application claim 1. A "double-sided adhesive layer" is necessarily a subcategory of, and narrower than, "adhesive." "[A] narrowing amendment made for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element." *Id.;* see also *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 122 S.Ct. 1831, 1839-40 (2002). "Any reason" necessarily includes "clarify[ing] the scope of the claim," as argued by ShieldMark in its brief. (Doc. 72, p. 12). An amendment made to clarify the scope of a claim is an amendment related to patentability. *Glaxo Group, Ltd.,* 262 F.3d at 1338. ShieldMark cannot argue that its self-serving labeling of the

addition of claim 12 as a "broadening" amendment avoids the application of prosecution history estoppel when the amendment was in fact narrowing.

**III.    There Are No Provisional Rights Available To ShieldMark Under The Application**

Even a cursory comparison of the claims of the published application that issued into the '480 patent (Doc. 59-1, p. 7 of 13) with the claims of the '480 patent as that patent issued (Doc. 59-1, p. 8 of 13) shows that the two are not directed to substantially identical inventions. Those documents resolve the issue in a self-evident manner. ShieldMark complains that InSite has not set forth the differences in detail. Those differences are glaringly apparent. To remove all doubt, the asserted independent claims 2 and 5 of the '480 patent are reprinted below with the limitations of those claims that differ from the limitations of the originally filed claims being underlined:

2.    An adhesive tape <u>for application to a flooring environment</u> comprising:

   a polymer layer having a thickness between 0.020" and 0.065", the polymer layer defining a first side; and

   <u>a double sided adhesive layer where one side of the double sided adhesive layer is in substantially continuous contact with the first side of the polymer layer and an opposing side of the double sided adhesive layer is disposed to adhere to the flooring environment;</u>

   <u>where the adhesive tape has a peel adhesion greater than 2.0lb/in width, measured under a test method including peeling the tape at a 90 degree angle after application to a stainless steel panel</u>.


5.    An adhesive tape comprising:

Case: 1:12-cv-00223-DCN  Doc #: 76  Filed:  06/14/13  11 of 12.  PageID #: 1324

>       a polymer layer having a Shore A Hardness of between 92 and 100 and a <u>substantially uniform</u> thickness of between about 0.020" and 0.065"; and
>
>       a layer of adhesive attached to said polymer layer;
>
>       <u>where the adhesive tape comprises a peel adhesion greater than 2.0 lb/in width when peeled at a 90 degree angle under a modified PSTC-101 method where the modified PSTC-101 method comprises a dwell time of one hour</u>.

No one, with the degree of candor owed to a court, could even begin to suggest that independent claims 2 and 5 are substantially identical to the claims as originally filed!

The asserted claims of the '480 patent and the claims of the original patent application are not directed to "substantially identical inventions" as required by 35 U.S.C. §154(d)(2). There are no pre-issue or provisional rights available to ShieldMark.

## CONCLUSION

The parties have focused only on independent claims 2 and 5 of the '480 patent. However, for the same reason that those claims are not infringed, the asserted dependent claims 3, 4, 6, 7, 8, 10, 12 and 13 are not infringed, for when an independent claim is not infringed, none of those dependent on it are infringed either. *Votex Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1383 (Fed. Cir. 2012). Accordingly, judgment should be entered as to non-infringement of each of the asserted claims and ShieldMark's Complaint should be dismissed in its entirety.

ShieldMark has acknowledged that there is no literal infringement of asserted claim 2 and no infringement under the doctrine of equivalents of asserted claim 5. For the reasons presented

11

in InSite's opening brief and for those reasons presented above, it is clear that there is no literal infringement of claim 5 and the doctrine of equivalents is unavailable as to claim 2. Accordingly, all charges of infringement fail.  Moreover, there are no pre-issue or provisional rights available to ShieldMark under the asserted claims because there is no substantial identity between the claims of the published patent application and the issued patent as required by 35 U.S.C. §154(d)(2).

Plaintiff's Complaint should be dismissed in all respects.

Respectfully submitted,

*/s/Ray L. Weber*
Ray L. Weber         (0006497)
Laura J. Gentilcore   (0034702)
Mark L. Weber         (0072078)
RENNER, KENNER, GREIVE, BOBAK,
    TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, Ohio 44308
Telephone:  (330) 376-1242
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

*Attorneys for Defendant, InSite Solutions, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013, the foregoing DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BRIEF was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/Ray L. Weber*